## THE ONTARIO BANK *vs.* BUNNELL and others.

A *banking corporation*, located in a *village* authorized by law to raise money by tax for certain purposes, is liable to pay its proportion of the *village taxes*, and its *real* and *personal* estate is accordingly subject to taxation.

Where such *village taxes* are directed to be assessed upon the *freeholders* and *inhabitants* of the village *according to law*, a monied or stock *corporation* having its banking house or office for the transaction of business within the bounds of such village, is an *inhabitant* within the meaning of the act; and a conformity in the assessment to the general law on the subject of the *assessment and collection of taxes*, as it exists at the time of the assessment, is a compliance with the direction that it be made *according to law*; although the general law, as it exists at the time of assessment, declares property subject to taxation, which according to universal usage was not deemed subject to tax under the general law as it existed at the time when the act was passed authorizing the assessment.

Where a party justifies the taking of property to satisfy a village tax imposed upon a bank, it is no objection to the defence that the personal property of the bank was assessed at double its value; the remedy of the bank was to have applied to the assessors for a reduction of the assessment.

TAXATION of banks. The plaintiffs declared against the defendants in *trespass de bonis asportatis* for taking coin to the amount of $127,20. The defendants by plea *justified* the taking as the proportion of a *village tax* assessed upon the plaintiffs. They averred, that under the act incorporating the village of *Canandaigua*, passed 18th April, 1815, and the act amending the same, a tax of $300 was voted on the first Tuesday of June, 1830, and directed to be assessed *for the public use of the village;* that the plaintiffs were on that day, and during the year 1830 continued to be a body corporate and politic, and were *freeholders*, and transacted their corporate business within the village, and maintained their office there for banking purposes, and during the year owned and possessed *real* and *personal* estate in the village liable to taxation; that they had a *capital stock* actually paid in, amounting to $500,000, of which $250,000 had been, and was at the time aforesaid transferred to their office of discount and deposite in the village of *Utica*, where the same was actually employed in the business of banking; that the assessors of the village proceeded to assess all the real and personal estate liable to

taxation to raise the money so voted, &c. and did, among other assessments for the purpose aforesaid, assess the property of the plaintiffs, to wit, their *real estate*, at $11,500, and their *personal property* at $456,220; and having made an assessment roll, and in other respects complied with the requirements of the statute, subsequently set down the sums to be paid as a tax upon the sums set down as a valuation of the real and personal estate liable to taxation, for the purpose of raising the said sum of $300, rateably and proportionably to the amount of such valuations, and did set down the sum of $127,20, as the rateable and proportionable amount to be paid by the plaintiffs of the tax voted as aforesaid. That thereupon the defendants, as *trustees* of the village, issued their warrant and annexed the same to the assessment roll, commanding the *collector* of the village to collect the said tax, and delivered the same to him; that the collector demanded of the *cashier* of the plaintiffs at their banking house payment of the said sum of $127,20 for the tax aforesaid, who offered to pay the portion of it assessed upon the *real estate* of the plaintiffs, but refused to pay the portion assessed upon their *personal property ;* whereupon the collector seized and took of the property of the plaintiffs sufficient money in pieces of silver and copper coins to pay the tax, and carried the same away, which is the same trespass, &c. and this, &c. wherefore, &c. To this plea the plaintiffs *demurred,* and the defendants joined in demurrer.

*B. F. Butler,* for the plaintiffs. The act of 1815, incorporating the village of Canandaigua, does not confer the power of taxing the *personal property* or capital of the plaintiffs. Statutes imposing taxes or burdens must be strictly construed, and the subjects liable to taxation must clearly appear, *Dwarris on Statutes,* 749 ; and this rule applies with peculiar force in this case, it having been settled by repeated decisions, and confirmed by legislative enactment, that a corporation cannot exercise any powers except such as shall be necessary to the execution of the powers expressly granted, 1 *R. S.* 600, § 3. The only authority for the imposition of this tax is to be found in the third section of the act incorporating the village, *Laws of*

NEW-YORK,
May, 1833.

Ontario Bank
v.
Bunnell.

1815, *p.* 266, which provides that the money to be raised as a tax shall be assessed upon the *freeholders* and *inhabitants* of the village, *according to law.* A corporation is not a *freeholder* or *inhabitant.* The Ontario Bank was limited in its duration to 20 years, and could not be a freeholder ; and that a corporation cannot be an *inhabitant,* i. e. a *resident,* is manifest. *Vide* 2 *Gall.* 105. 3 *Conn. R.* 15, 24, 25, 26. The words *freeholders* and *inhabitants* do not include corporations, and it is evident from the context of the act that *natural persons* only were intended ; thus, the freeholders and inhabitants are to meet and elect officers, and no tax is to be imposed without the consent and approbation of a major part of them, shewing that the parties subject to the tax are to have a voice in determining its propriety, which a corporation cannot have. Thus, by looking at the whole statute, its intent is ascertained. *Bacon's Abr. tit. Statute, I.* 2. The provision that the tax shall be assessed *according to law* refers to the *mode of assessment,* and not to the *subjects of taxation.* In 1815, it was the general received opinion that the *personal property* of monied corporations was not the subject of taxation, and the usage was not to tax it ; now, although by subsequent acts of the legislature such property has been subjected to taxation, the act of 1815 should not be so construed as to include a subject which did not exist at the passage of that law. 6 *T. R.* 286. 5 *East,* 478. At all events, the legislature, in subjecting incorporated companies to taxation, did not intend to make them liable to *village taxes ;* the general act has no reference to such taxes, and corporations should not be subjected to them by an equitable construction of the statutes. Recently, in England, the judges have manifested the strongest inclination to adhere more closely in the construction of statutes to the words of the act. In one case, Lord Tenterden says : " I cannot forbear observing that I think there is always danger in giving effect to what is called the equities of a statute ; and that it is much safer and better to rely on and abide by the plain words." 6 *Barn. & Cres.* 475. See also 3 *Maule & Sel.* 20, for the observations of Lord Ellenborough, and *Dwarris on Statutes,* 708, 749, 768. If it is proper that those companies should be liable to such taxes, let the legislature so declare. If the cor-

poration in this case may be taxed, such of the stockholders as are freeholders and inhabitants of the village, being liable by the very terms of the act of 1815 to be assessed, the consequence will be that there will be a double taxation on the same property. 2 *Mass. R.* 544. 10 *id.* 514. 17 *id.* 461. 5 *Greenleaf*, 133. If the bank be taxable for its personal estate, that portion of its capital which had been transferred to the office of discount and deposite at Utica should have been deducted.

*J. C. Spencer & J. A. Spencer,* for the defendants. The act vesting certain powers in the freeholders and inhabitants of the village of Canandaigua, authorizes money to be raised by tax for the purchase of fire engines and for erecting fire engine houses, and for making any public improvements or necessary repairs. Upon principles of natural justice and equity, therefore, a monied corporation who have their banking house within the bounds of the village and transact their business there, ought to contribute towards the expenses of a municipal establishment from which none can derive a greater benefit than do such corporation. The tax is to be assessed *according to law,* and *collected in like manner* as the taxes of towns and counties are collected ; which must be understood to apply as well to the *subjects of taxation* as to the mode of assessment and collection, and not be limited to the strict construction contended for on the other side, for should that prevail and a literal interpretation be given to the terms, that the tax shall be assessed upon the freeholders and inhabitants of the village, only a *poll tax* could be imposed, which could not have been the intention of the legislature. The plaintiffs in this case, although a *corporation,* were *inhabitants* within the meaning of the act. Lord Coke, in his exposition of the statute, 22 *Hen.* 8, *ch.* 5, for the *repair of bridges,* commenting upon the word *inhabitants* with respect to what persons are included under that description, says, every corporation and body politic having lands, &c. are inhabitants within the purview of this statute, 2 *Inst.* 703 ; and in *Rex* v. *Gardner, Cowp.* 79, it was held that a corporation seized of lands in fee for their own profit are, within the meaning of the statute, 43 *Eliz. ch.* 2, *inhabitants*

or *occupiers* of such lands, and in respect thereof liable in their corporate capacity to be rated to the poor.   This case having been decided previous to the revolution, is the best evidence of the common law on this subject, and is obligatory upon our courts.   It was recognized as sound law in 2 *Gall.* 105, and also in 11 *Wheaton*, 412 ;  previous to which last case the doctrine of Lord *Coke* and the case in *Cowper* had been sanctioned in 5 *Cranch*, 88.   Chief Justice *Thompson*, also, in 15 *Johns. R.* 382, says, that in the case of the *Clinton Woollen and Cotton Manufacturing Company* v. *Morse and Bennet*, it was decided, as early as October term, 1817, that under the act for the assessment and collection of taxes, *corporations* are liable to be taxed for property owned by them, although the act speaks only of *persons* liable to be assessed, and the term *corporation* is not used.   The *general tax law* in force at the time of the incorporation of the village, and to which reference is made as to the mode of taxation and manner of collection, declares that the taxes thereafter to be levied in the state shall be assessed upon a valuation of *real* and *personal estates ;* it speaks only of *persons* to be assessed, and yet it was never doubted that the *real estate* of a corporation was taxable ; and if the real estate, why not the personal ?   The language of the act is the same as to both species of property.   It is said the bank cannot be a *freeholder*, because its existence is limited to 20 years ; should this be conceded, still it is an *inhabitant*.   But why cannot the corporation be a freeholder ? Can it not hold during life, or may it not hold an estate of freehold during that time ?   It is also objected that as the corporation cannot vote in the election of officers or in the imposition of a tax, it should not be subject to the payment of the tax ; but this argument cannot prevail, for if so, *females* and *infants* would equally with corporations be exempted from taxation.   The requirement in the statute that the assessment should be made *according to law*, undoubtedly related at the time of its enactment to the general tax law as it then existed, but it equally relates to the same general tax law as it exists at the time of the imposition of the tax ; and if so, there is no danger of double taxation, as it is expressly provided that the holder or owner of stock in any incorporated

company, liable to taxation on its capital, shall not be taxed as an individual for such stock. 1 *R. S.* 387, § 7. As to the last point on the other side, that the sum transferred to Utica ought to have been deducted, it cannot be urged here, as the plaintiffs should have applied to the assessors for a reduction of the amount assessed, and having omitted to do so, they cannot for this error hold the defendants responsible in trespass.

*Butler*, in reply. The exposition of Lord *Coke* of the statute, 22 *Hen.* 8, *ch.* 5, for the repair of bridges, in commenting on the word *inhabitants*, proves nothing, as the statute itself uses the word *corporation;* nor does the case of *Rex* v. *Gardner* help the defendants. Lord Mansfield placed his decision of that case upon usage and not upon principle. Besides, the question there was whether the corporation was taxable for *real estate*, not *personal property*. The case of *The King* v. *Nicholson*, 12 *East*, 329, virtually overturns the decision in *Rex* v. *Gardner;* it was a question under the same statute of 43 *Eliz.* respecting poor rates, and the judges all concur in the opinion that the word *inhabitant* in that statute means a *resident*, especially as the word *occupier* is used as well as that of *inhabitant*. Applying the principle of this case to the one now before the court, the plaintiffs were liable to be assessed as *freeholders*, in respect to their freehold, but not as *inhabitants* in respect to their *personal property*. The statute 43 *Eliz.* it has been said, never received a just construction founded upon the words of the act "as inhabitant" and "occupier," until the decision in 1810 of the case of *The King* v. *Nicholson*, when the law upon this subject was for the first time settled. *Dwarris on Statutes*, 710. The cases cited from *Cranch* and *Wheaton*, adopt in some measure the latitudinarian doctrine of Lord Mansfield in *Rex* v. *Gardner*, but do so with qualifications. In the case of the *Clinton Manufacturing Company*, mentioned by C. J. Thompson in 15 *Johns. R.* 382, the question must have been whether a corporation could be taxed in its own name for *real estate* owned by it, instead of charging the tax to the *occupant*; for the question whether a corporation was liable to be taxed for *personal property* could not have been agi-

NEW-YORK,
May, 1833.

Ontario Bank
v.
Bunnell.

tated, as under the then existing law such property was never taxed.

*By the Court,* NELSON, J.   The corporation of the village of Canandaigua are declared by the act incorporating it, capable of *raising money by tax* for certain purposes ; which money so to be raised, to be assessed upon the *freeholders* and *inhabitants* of the village *according to law.   Laws of* 1815, *p.* 266, § 3.   When this power was granted, the general act of 1813, for the collection of taxes, 2 *R. S.* 509, was in force, and under it and all previous acts relative to taxes, corporations were not taxed or understood to be taxable for their capital or *personal estate ;* such estate being taxed in the hands of the stockholders, each to the extent of his stock.   By the act of 1823, the assessors of each town and ward in the state were required in every year to ascertain according to the best evidence, and set down in their assessment roll the value of *houses* and *lands* in such town or ward, owned or possessed by any *person* residing therein opposite to his name ; and also to ascertain and set down in like manner, the value of the *personal estate* of every such *person* over and above his debts.   Whether, upon well settled principles of construction, corporations might not have been taxed for their capital or personal estate under that act, is a question not material to be examined, as the usage under it was otherwise until 1823, when, by the act for the assessment and collection of taxes passed in that year, it was enacted that assessments should be made and taxes imposed upon all incorporated companies receiving a regular income from the employment of capital, in the same manner as upon individuals.   *Laws of* 1823, *p.* 395, § 14.

There can be no doubt the term *inhabitant* includes a corporation occupying an office or building in a town, ward or village, in conducting the business of their corporation for many purposes, and especially with reference to the burthens of taxation for public purposes.   By the 22 *Hen.* 8, *ch.* 5, it was provided, in the case of bridges broken in any town, &c. that they should be made by the *inhabitants of the county, &c. ;* under this clause it has been held by all the courts in England, that every corporation or body politic, residing in any town, &c. or

having lands therein which they occupy, are inhabitants within the purview of the statute. 2 *Inst.* 703. 1 *Burns' J.* 278. *Cowp.* 79. By the 43 *Eliz. ch.* 2, for the relief of the poor, a tax was directed to be raised upon every *inhabitant* and every occupier of lands, houses, &c., and under this act corporations are held to be rateable, both as *inhabitants* and *occupiers*, *Cowp.* 84, 3 *Burns' J.* 631, and the assessments are upon the real and personal property of the person taxable. 3 *Burns' J.* 624. See also, 3 *Burns' J.* 614, and onward, where cases are collected. Lord Holt held the toll of a corporation taxable. It is said, 2 *Bullstr.* 354, cited in 3 *Burns' J.* 640, that the taxation ought to be made upon the inhabitants and occupiers of lands within the parish, according to the visible estates and possessions, real and personal, which they have and enjoy within it. Ch. J. Thompson, in *The People* v. *Utica Ins. Co.* 15 *Johns. R.* 382, upon the authority of the cases which included corporations within the term *inhabitants*, came to the conclusion, that the word *person*, in the act restraining private banking, included corporations in the prohibition ; and he reports a case, decided by this court, in which the Clinton Woollen and Cotton Manufacturing Company, under the act of 1813, for the assessment and collection of taxes, were held liable to be taxed for their property, though *persons* was the only term used, and in which they must be included, if at all. We may from the above cases, upon authority, determine that the plaintiffs are fairly included within the term *inhabitants* used in the act ; and as it is averred in the plea, that they are owners of real estate, and freeholders within the village, I can perceive no reason why they might not be included within the latter term ; they may be freeholders, by the express terms of their charter.

But, it is said, upon this principle stockholders residing in the village would be liable to double taxation, first, in their individual capacity, and second, as owners of the stock to the amount they hold. The argument is this : as the charter directs that the tax shall be assessed upon the freeholders and inhabitants of the village *according to law*, it means according to the general tax law of 1813 ; and as by the usage and con-

struction of that law, the tax was imposed upon the stockhold-ers and not on the corporation, consequently, in this case, though the stock be taxed to the corporation, the assessors would still be bound, in pursuance of the general act, to tax it to the individual holders. I admit that there is great, if not decisive force in the argument, if the mode of taxing bank stock by the existing law was the same as it was in 1815 ; but now by law the capital is taxed to the corporation, and not otherwise. 1 *R. S.* 387, 8. By the first section of the law on this subject, it is enacted that all lands and all personal estate within this state, whether owned by individuals or corporations, shall be liable to taxation, subject to the exemptions afterwards specified. Section 4 exempts the personal estate of every incorporated company, not liable to taxation on its capital. Section 7 provides that the owner or holder of stock in any incorporated company, liable to taxation on its capital, shall not be taxed as an individual for such stock ; and by subsequent provisions it is enacted that all monied or stock corporations, deriving an income or profit from their capital or otherwise, shall be liable to taxation on their capital, 1 *R. S.* 414, § 1, and that the capital stock of every company liable to taxation, except, &c. shall be assessed and taxed in the same manner as the other real and personal estate of the county, &c. Now the language of the charter, that the tax shall be assessed upon the freeholders and inhabitants of said village *according to law,* I apprehend, must be construed to mean, according to the principles and directions of the general tax law existing at the time when the assessment is made and is to be enforced. The expression was obviously used to avoid the necessity of going into the detail of the principles and mode of levying the tax, by a reference to the general law that existed at the time on the subject, and which answered every purpose. But if the law of 1813, which was in force when this charter passed, was the one referred to in the charter to regulate the principles and mode of assessment upon the freeholders and inhabitants, then the act, altered and modified as it was in 1823 and 1830, should equally have that effect. Could it be pretended, if certain articles of property subject to taxation under the law of 1813, as it existed

In 1815, had been exempted by a subsequent act, that those articles were still taxable under the power conferred by this charter? Or if some exempt had been made liable to taxation, that they could not be taxed under it ? Certainly not. As to the *subject* or *species of property* taxable and *the mode* of levying, the charter conveyed to the officers acting under it no information, except by the reference to the general law, and on looking into that law, they must act in conformity to its provisions in this respect as it exists at the time. There are numerous bodies in this state, like the village in question, who possess to a limited extent the power of local taxation, and, I presume, in every instance, the principles and mode of imposing a tax are ascertained by reference to the general law ; and we should lament to be obliged to give to their several powers such a construction as would prevent a participation in the improvements of the system of taxation, which are made from time to time, and to be found only in the general law on the subject. The act now in force expressly forbids a tax upon the individual for his stock in a company liable to taxation on its capital, like the one in question, and there is no law authorizing it, as the act of 1813 is repealed, and I cannot perceive by what authority the trustees in this case could impose such a tax. Upon the whole, I am of opinion the officers in acting under this charter were bound to look to the general law of 1830 for the principles and mode of levying the tax voted to be raised ; that the plaintiffs came within the description of the persons on whom the tax might be imposed, and that their capital stock was liable to such taxation.

It was also objected to the assessment in this case, that the capital transferred to *Utica* ought not to have been taken into the estimate of the personal estate of the bank. The answer is, that the error is not available to the plaintiffs in this suit ; they should have appeared before the proper officers, and applied according to the regulations of the general tax law to reduce the amount; and if they had been improperly refused, there was an appropriate remedy. The amount assessed is conclusive in this action, and cannot be inquired into.

Judgment for the defendants.