D. Johnson, Ch.,
dissenting. I concur with the Com’t, that the injunction was properly granted, but I cannot agree that the lands, in the hands of tenants, or even in the possession of the church, are not the subject of taxation.
The Act of 1783, incorporating the city, authorizes the City Council to “ make such assessments on the inhabitants of Charleston, or those who hold taxable property within the same,” &c., “ as shall appear to them expedient,” and the ordinance, under which this assessment was made, provides, amongst other things, that a tax of fifty cents should be assessed on every $100 of the value of every house, building, or wharf lot, or other landed estates. The terms “ taxable property,” used in the Act of incorporation, are, in all conscience, broad enough to cover every thing that can become the subject of property, and the power of the City Council over the subject has not since been abridged or limited, The ordinance authorizes an *147 assessment on all landed estates within the limits of thé city; and when it is known that these lands are located there, and are owned and possessed by persons residing there, all argument on the question, whether they are liable to taxation, appears to me to be concluded, and in attempting to reason about it at all, I feel as if I was endeavoring to demonstrate a self-evident proposition.
It is not pretended that the Legislature has taken away from the City Council, in express terms, the authority to tax even the lands held and possessed by the church itself, but it is supposed to be implied by the Act of 1815, which exempts from the State tax “ the property of any religious society,” <fec.
If this implication can be maintained, it follows, that the City Council can tax nothing which is exempted from the State tax, by express enactment; and if that be true, neither can it tax property not taxed by the State; for I cannot distinguish between property exempted from taxation by express enactment and that not taxed at all. The consequences are precisely the same — neither pays any tax.
The word taxable, used in the Act of incorporation, as descriptive of the property authorized to be taxed, imports nothing else than property that may be taxed, and in the common sense view of it, every thing that one could have, or possess, is included; and at first view it would seem to have been unnecessarily introduced. But it has its meaning and its use, notwithstanding. The city contains numerous public buildings, which are used exclusively for the purposes of the State; the streets, too, are common to all, and they cannot be taxed, because no one is liable to pay the taxes. They are not taxable property.
Words are not always construed according to their literal meaning ; they are sometimes understood in a technical sense, at variance with the literal; and in a doubtful case, I should hardly think it would be objected that the enactments of the Legislature, which used them, might bé resorted to for the purpose of attaining the truth. If we refer to the Act of 1815, which contains a classification of the lands, with a view to taxation, it will be found to contain a general, sweeping clause, by which a tax is imposed on all the lands owned within the limits of the State, and *148 if the church lands were not taxable property, where was-the necessity, and what was the use, of the proviso, “ that nothing in this Act contained, shall he construed to impose any tax upon the property, or estate, of any religious society V’
If it he insisted, that the taxes, imposed by the State, on the property of the inhabitants, indicate that, by taxable property, is meant property taxed by the State, to what period of her legislation will it be referred'? The power of taxation, for the purposes of State, is unlimited, and from time to time taxes have been imposed on property, interests, or income, which have been afterwards exempted, or in other words not taxed; and I do not know what is meant when it is said that property is exempted from taxes, by usage. The Act of 1788. Pub. Laws 436,' may be referred to, as an example ; that imposes a tax on carriages, (“ vvagons, carts and drays excepted”) and it is worthy of remark, that in the same parenthesis the lands whereon buildings are erected for divine worship are also exempted; and I do not know that any thing would surprise the inhabitants of Charleston more, than to be told that wagons, carts and drays, from which, now and for many years past, they have derived a considerable revenue, are not liable to the city tax, because they were exempted from the State tax by express enactment, in 1788, and have, never since been taxed ; and if the church property is exempted, for that reason, clearly, these articles of pror perty are also exempt, by the same rule.
The state has already received her portion of the surplus revenue. For aught we know, Congress may, at no distant day, distribute amongst the States the proceeds of .the public lands. The friends of the Bank of the State hoped, when it was incorporated, that at a ‘future day, the profits from it would pay the civil list, and if from one, or all of these sources, the State should derive a revenue sufficient to meet all the demands upon her treasury, it would be no surprise to find in our statute book, “ Be it enacted, in consideration of the premises, that, for ten years to come, no tax shall be imposed on the inhabitants of this State for the service of .State.” In that event, Charleston, *149 without the power of taxation, must become a waste, and riot and disorder pervade her streets.
In this connexion, the case of a bank exempted from the payment of taxes, by express enactment, in consideration of' the bonus paid, is put in the Circuit Court decree as an illustration, and this, it is said, exempts it from city taxation, and therefore the church lands cannot be taxed.
In conferring on the City Council the power of taxation, the Legislature must have reasoned, that money was as necessary, though perhaps to a less amount, to carry into effect the objects of the corporation as it was to carry on the machinery of the goverment of the State — they said, therefore, to the incorporation, assess a tax[on all the inhabitants toho hold taxable property, to such an amount as you may deem expedient, and as will provide the means of defraying the expenses of the city. The banks have hitherto derived, and it is hoped will continue to derive, large profits from the privileges granted to them, and reasoning, a priori, it is difficult to perceive why the banks, in respect to the property they own, as corporations, should not contribute, in common with the citizens who hold property, to the expenses of the city, in the good order and government of which they are equally interested. But they are the creatures of the Legislature, which had the right and the power to clothe them with1 all the privileges, immunities and responsibilities, that it might think proper ; and the reason why they are not liable to the city taxes is well expressed by my brother O’Neall, in the case of the State Bank et al. vs. the City Council of Charleston, decided in March 1832, but, I believe, not published. The banks were not in existence at the time the city was incorporated, they had neither form shape nor substance. They were created, called into existence, by the will of the Legislature, and the very act which created them, declares, that they should, during the continuance of their charters, be exempt from all taxes; excluding the idea that they were liable to taxation under any authority derived from the State — not so with regard to the Church lands. Ás before shown, all the acts for raising a revenue, for the service of the State, regard them as a subject of *150 taxation, and the exemption is merely directory to the assessors and collectors, not to impose it on them.
I am of opinion, notwithstanding, that the Church is not liable to this assessment. The authority given by the act of incorporation, to the City, Council, is, to impose an assessment on the inhabitants who hold taxable property — these lands are in possession of the tenants — they are held by the tenants, and supposing that, as Church lands, they are exempted from taxation — how is it, I would respectfully ask, that the tenants are not taxable, in respect to the interest they have in them, whether it consists of a leasehold, freehold, or the fee — there is, certainly, nothing in any of the acts referred to, which has the most distant allusion to such an exemption, nor is there any thing in reason or common sense to shew that they ought not to contribute, in common with the other inhabitants, to the common charge.
Most of the leases, it is said, contain covenants, that the lessees shall pay all assessments and taxes, and this is another reason why they, and not the lessors, are bound, as between them and the city authorities, to pay the taxes.
The process of collecting taxes is, and must necesarily be, a summary one. If the taxes are not paid, the collector forthwith issues his execution, without notice, summons, or trial, against the delinquent, under which the sheriff may seize any of his property and sell it for payment of the taxes. How is he to know to whom the property belongs, unless the ownership is indicted by the possession'? If the party in possession tells him that it is the property of another, and that other disclaims it, is he to sit in judgment and determine to whomitbelongs, and against whom to issue his execution? We look in vain through our statute book for any authority for such a proceeding.
The case referred to, in the Circuit Court decree, as having been decided in 1800, appears to have been the case of the lessees of the Glebe lands against the collector and assessor of State taxes, to which neither the present complainants nor defendants were parties, and of course they *151 are not bound by it as res judicata, and I do not understand that this is now insisted on.
DAVID JOHNSON.
O’Neall and Earle, Justices, concurred.
J. Johnston, Ch. signed neither opinion.
Eckhard, for the motion, contended, that under the powers granted to the City Council of Charleston, by the Legislature, they had the power to pass the Ordinance, which subjected the property of this Church to city taxation. Under the constitution, this sect of Christians is not more favored than any other. Religious liberty is guaranteed to all denominations. He cited in the course of his argument, upon the various grounds of appeal — 2 Kent’s Com. 332; 1 N. & M’C. 528; Decisions, 1832, p. 105, The State Bank vs. The City Council also, Id. 107; State Cons. Art. 8; 4 Peters 561 — Act 1785, for raising supplies, 4th Stat. at Large, 11 sec. p. 693-5. Id. 209, 227, 3d sec.; Act 1806, 5th Stat. Id. p. 331 Act 1815, (classification.)
Dalco’s Church History, p. 34; 1 Angel & Ames, 257; 1 Kent, on Poss. 703; 2 Coke’s Just 703; 7 Barn. & Cress. 14; 15 Johns. 782; 10 Wend. 193 — Branch Bank of S. C., at Georgetown vs. The Town of Georgetown, Bay’s MSS. Rep. 693, 6 Term. Rep.
M’Crady, contra : Said that the land was exempt from taxation, under the City Ordinance. He denied the right of the City Council to tax the lands. We must look to the will of the State, creating the power. He cited in support — 3 Brev. 226. Inhabitants, Mr. M’Crady said, were not a corporation — 4 Burr, 2039; 4 Stat at Large, 53. Id. 530. 5 Id. 50; Ord. Jan’y. 1790, 5 vol. Id. p. 142, 6 sec. 143; Act 93, 5 Id; Act 1815, p. 8 — 6 vol 2 sec; 11 Seageant & Rawls, 394; 8 John. 390.