Nelson, Ch. J.
By the first section of 1 R. S. 414, it is provided that all monied or stock corporations, deriving an income or profit from their capital or otherwise, shall be liable to taxation on their capital. The next section provides that some one of the officers of each company shall, on or before the first of July in each' year, make and deliver to the assessors a written statement, specifying, 1st. The real estate, if any, owned by such company, the towns or wards in which the same is situated, and the sums actually paid therefor; 2d. The capital *265 stock actually paid in and secured to be paid in, excepting therefrom the sums paid for real estate, and the amount of such capital stock held by the state, and by any incorporated literary or charitable institution; and 3d. The town or ward in which the principal office or place of transacting the financial business of the company is situated. The third section provides that a like written statement shall be delivered to the comptroller ; and that both statements shall be made under oath. By the sixth section the assessors are required, On receiving the statement, 1st. To insert in the first column of the assessment roll the name of the company, under which they are to specify the amount of the capital stock paid in and secured to be paid in, the amount paid by the company fot real estate, and the amount of its stock, if any, held by the state, or by incorporated literary and charitable institutions ; 2d. In the next column they are to enter the quantity of real estate owned by the company, and in the third column the actual value of the same; 3d. In the fourth column they are to enter the capital stock of all incorporated companies (with three exceptions) paid in, and secured to be paid in, after deducting the sums paid for real estate, and the stock held by the state, and by literary and charitable institutions. By the seventh section the assessors are also directed to insert in the fourth column, the cash value of the stock of all manufacturing and turnpike corporations, deducting therefrom the items mentioned in the preceding section, which value, together with the value of their real estate, shall constitute the amount on which the tax is to be assessed.
If the statute had stopped here, no one could entertain a doubt about the question presented for our decision, namely, the amount of personal property upon which the company in this case is liable to be assessed. There are but two modes prescribed by which the assessors are to be governed in the case of corporations. In one class of cases they are to take the amount of the capital stock, less the sums paid for real property, the stock held by the state, and by literary and charitable institutions. Here no valuation is to be made, and no discretion exercised, but the amount is settled by arithmetic. Subtract the *266 three given items, and you have it. In reference to manufacturing and turnpike companies, the assessors are to take the cash value of the stock, less the three items above mentioned, and the remainder constitutes the amount on which they are liable to be taxed. Here an estimate is to be made by the assessors, and a discretion exercised. They are to ascertain the cash value by sales of the stock, or in any other judicious, practicable manner.' ,
These two modes of assessment include the whole brotherhood of corporations in the state that are at all subject to taxation. And they are to be assessed either upon the capital stock, with specified deductions, or upon the cash value of the capital stock, with like deductions, as the case may be.
Then come the two sections of the statute so much relied on by the appellants. By the eighth section it is declared, that the “ provisions of the fifteenth section of the second Title of this Chapter shall be and are hereby extended to the incorporated companies in the two preceding sections named; and the president, secretary or other proper officer, may make the affidavit required by said section.” This fifteenth section is as follows: “If any person whose real or personal estate is liable to taxation, shall at any time before the assessors shall have completed their assessments, make affidavit that the value of his real estate does not exceed a certain sum, to be specified in such affidavit ; or that the Value of the personal estate owned by him, after deducting his just debts, and his property invested in the stock of incorporated companies, liable under this chapter to taxation on their capital, does not exceed a certain sum to be specified in the affidavit, it shall be the duty of the assessors to value such real or personal estate, or both, as the case may be, at the sums specified in such affidavit, and no more.” (1. R. S. 392.)
I admit this section applies to all the incorporated companies liable to taxation on their capital under the provisions of 1 R. S. 414, et seq.; and the same operation and effect is to be given to it as if it had been embodied in that part of the revised statutes. And being so incorporated, the single question is, how far is it *267 to be regarded as controlling, or as enabling the several corporations to control, by means of its provisions, the amount of the capital stock upon which they are to be taxed?
The appellants insist that any one of these companies may, under this section, swear down their capital to the actual amount as existing at the time, deducting losses, or to the amount left, after deducting just debts; in other words, that they may swear it down to the amount of the actual value of the stock when the assessment is made. Their affidavit delivered to the assessors accordingly states that their capital had become reduced in value by losses in business, so as not to exceed the amount of one million and forty thousand dollars, and that the value of their personal property, after deducting just debts, did not exceed the sum of nine hundred and forty thousand five hundred and fourteen dollars and twenty-nine cents.
We have already seen that the legislature have divided taxable corporations into two classes; one to be taxed on the amount of their capital, with specified deductions, and the other upon the cash value of their stock. Now what seems to be an insuperable objection to the ground here taken by the appellants is, that it obliterates one of these two modes of assessment from the statute book. The statute declares that none but manufacturing and turnpike companies are to be taxed on the cash value of their stock. The argument in favor of this company asserts in effect that all corporations are thus taxable.
Before we yield to a construction that breaks up so thoroughly the expressed intention of the legislature, we are bound to see whether these general provisions may not be reconciled with each other, so as to give effect to the whole. I have no doubt they may.
In the first place, the fifteenth section applies to all that class of corporations which are directed to be assessed on the cash value of their capital stock. A valuation of the stock is to be made by the assessors in these cases, and it is fit and proper, therefore, that the companies should be allowed to correct any over estimate. This is a very important effect to be given to the section. In the next place, it applies to all the real estate belong *268 ing to the several corporations of both classes, as the tax is upon the value. And finally, it applies where there is error on the part of the assessors in respect to the amount of the capital.
I admit, effect has been given to the provision beyond what is here supposed to belong to it, and that upon very high authority. These companies have been allowed to swear down the amount of their capital, by causing to be deducted therefrom stock held by them in other corporations liable to taxation, thereby extending the deductions beyond the three items specified in the statute book.(a) If this departure from the deductions specified can be sustained upon any sound view of the section, then I concede the argument in favor of the deductions contended for in the present case is unanswerable. It is impossible in my judgment to distinguish the two cases..
One argument strongly urged in favor of deducting the stock in other companies has been, that otherwise it would be subjected-to double taxation, which is true. But it may be said with equal force here, that unless the deductions claimed are made, the company will be subjected to a tax upon a million of capital which they do not possess; as hard a case, one would suppose, as that of double taxation.
A deduction for just debts stands precisely upon the same footing as a deduction on account of stock in other companies. Both are put by the statute in the same category, and if the one can be made by force of the affidavit, so may the others, upon any consistent construction of the provision.
My own opinion is, however, that neither can be made; and that the legislature have specified in the sixth and seventh sections of 1 R. S. 415, all the items which they intended should be taken out of the amount of the capital,
This case, as well as the case of double taxation, is undoubt *269 edly a hard one. The relief, however, is not with the courts, but with the legislature. The latter may change the rule for the future, and may also, if deemed proper, remedy the hardship of past cases. It is quite clear, I think, that the claim now set up to reduce the amount of capital beyond the deductions made by the statute itself, would virtually repeal all that part of the system of taxation which makes a distinction between the amount and the cash value of capital stock— a distinction, as we have seen, running through a series of provisions, and intended to favor a most useful but not the most profitable class of corporations, namely, manufacturing and turnpike companies. The present experiment therefore is somewhat bolder and more thorough in its proposed work of reforming the law by constructions ab inconveniente than the one attempted in reference to the case of stock invested in other corporations; and it should admonish us to pause, if the system is to be any longer upheld.
For these reasons I am in favor of affirming the decree of the court below.
Lott, Senator.
The question presented in this case is, whether the appellants, a moneyed corporation deriving an income from their capital, are liable to taxation on the whole amount of their capital paid in, notwithstanding a portion of it has been lost.
-The subject of taxation has always been one of embarrassment and difficulty. Although the general principle is conceded that all property should bear its just proportion of the expenses necessary for the support of government, yet it is found to be difficult to carry it into practical operation. Experience has shown that real estate has always contributed more than its due share of the public burdens, while a great amount of personal property entirely escaped taxation, and such has been peculiarly-the case in reference to stocks of incorporated companies.
Prior to 1823 such stock was taxable in this state like other personal property in the -hands of the individuals who held it. In that year our system of taxation was revised, and the princi *270 pie of taxing corporations specifically was first adopted. (Sess. Laws of 1823, p. 390, §§ 10, 14.) In 1825 an amendment to that law was passed, remedying the defects which had been found to exist, and prescribing with more certainty the manner in which taxation should be made. (Sess. Laws of 1825, p. 373.)
Although these laws were repealed by the general repealing act passed December 10th, 1828, yet the provisions thereof, particularly those in relation to the taxation of incorporated companies, were introduced into the act now in force, contained in the thirteenth chapter of the- first part of the revised statutes. (1 R. S. 387.) And as the rights of the appellants depend on the true construction of the provisions of that act, it is necessary to examine some of its details.
The first title of the chapter referred to designates the property liable to taxation, and by the first section it is declared that “ All lands and all personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation,” subject to certain exemptions which are particularly defined in the fourth section of that title, among which are specified “ all stocks owned by the state, or by literary or charitable institutions.” By the third section it is declared that the term“ personal estate” and “ personal property,” wherever they occur in that chapter, shall, among other property, “ also be construed to include such portion of the capital of incorporated companies liable to taxation on their capital as shall not be invested in real estate.”
The second title prescribes the place and manner in which property is to be assessed, and is applicable principally to property owned by individuals, which is directed to be assessed at its full value. The sixth section, however, declares that “ the real estate of all incorporated companies liable to taxation shall he assessed in the town or ward in which the same shall be, in the same manner as the real estate of individuals,” and also prescribes the place where “all the personal estate” of such companies shall be assessed, but the manner of making the assessment is regulated by the provisions of the fourth title.
The first section of the fourth title provides that “all moneyed *271 or stock corporations deriving an income or profit from their capital, or otherwise, shall be liable to taxation on their capital in the manner hereinafter prescribed.” It is then made the duty, by the two subsequent sections, of the president, or other proper officer of such company, (under a penalty fixed in the fourth section for an omission,) to make and deliver, on or before the first day of July in each year, to the assessors of the town or ward in which such company is liable to be taxed, and also to the comptroller, a written statement, certified under oath to be just and true, specifying 1st. The real estate, if any, owned by such company, the town or ward in which the same is situated, and the sums actually paid therefor; 2d. The capital stock actually paid in, and secured to be paid in, excepting therefrom the sums paid for real estate, and the amount of such capital stock held by the state, and by any incorporated literary or charitable institution; and 3d. The place where it is liable to taxation. The sixth section then provides that “ the assessors shall enter all incorporated companies from which such statements shall be received by them, and the property of such companies, and the property of all other incorporated companies liable to taxation in their respective towns, in their assess-" ment roll, in the following manner: 1st. They shall insert in the first column of their assessment rolls the name of each incorporated company in their respective towns, liable to taxation on its capital, or otherwise, and under its name they shall specify the amount of its capital stock paid in, and secured to be paid in, the amount paid by such company for real estate then belonging to such company, wherever the same may be situated, and the amount of stock, if any, belonging to the state, and to incorporated literary and. charitable institutions; 2d. In the second column they shall enter the quantity of real estate owned by suqh company, and situated within their town or ward, and in the third column the actual value thereof, estimated as in other cases; 3d. In the fourth column they shall enter the capital stock of every incorporated company, (excepting manufacturing and turnpike corporations' and marine insurance companies,) paid in, and secured to be paid in, after deducting *272 the sums paid out for all the real estate of such company, wherever the same may be situated, and then belonging to it, and the amount of stock, if any, belonging to the people of this state, and to incorporated literary and charitable institutions. By the seventh section it is provided that the assessors shall insert in the column mentioned in the preceding section, (referring undoubtedly to the fourth column,) the cash value of all the stock of all manufacturing and turnpike corporations, (to be ascertained by the assessor by the sales of the stock, or in any other manner,) deducting therefrom the items mentioned in the preceding section, which value thus ascertained, together with the value of the real estate of such corporations, shall constitute the amount on which the tax of such corporations shall be levied. The eighth section then extends the provision of the fifteenth section of the second title, (providing for the reduction of the valuation of the property of individuals when assessed beyond its value,) to the incorporated companies named in the two preceding sections.
The efiect of the provisions of the sixth and seventh sections of this title, unless qualified by other sections of the law, is obviously to make all corporations referred to in those sections, (except manufacturing, turnpike and marine insurance companies,) liable to taxation on the actual value of the real estate owned by them, and on the whole amount of their capital stock paid in, deducting only therefrom the amount paid for such real estate, and the amount of the stock, if any, belonging to the state, and to incorporated literary and charitable institutions, without reference either to accumulations or losses in their business. (Bank of Utica v. The City of Utica, 4 Paige, 399.) The same view was taken by Mr. Justice Bronson of this question, in the case of The People v. The Supervisors of Niagara, (4 Hill, 20,) although I admit it was not necessarily involved in the decision of the case.
The provisions of the first, second and sixth sections of title four are substantially the same as those prescribed for the taxation of incorporated companies in the fourteenth section of the act of 1823, and in the first section of the act of 1825, except so *273 far as they relate to manufacturing, turnpike and marine insurance companies, which were not exempted from the operation thereof by either of those acts. And here it may be remarked that the objection urged against the justice of taxing moneyed corporations, on the whole amount of their capital paid in, or secured to be paid in, where it has been reduced by losses, was directly presented to the consideration of the legislature by the late Chief Justice Savage, in a report made by him while comptroller in 1823, in which he recommended that banks and insurance companies should be permitted to reduce their capital at pleasure; and a clause to that effect was contained in the bill accompanying his report, but was not adopted by the legislature, although the other provisions of the bill were principally enacted. (See Assembly Doc. of 1823, Appendix C. & D.; Sess. Laws of 1823, p. 390.)
It appears however that the principle of taxation adopted in 3 823 and 1825 was but partially carried into effect, through a misapprehension of the duties imposed on the officers charged with their execution, and a circular was in consequence issued by the comptroller to the several boards of supervisors on the 23d day of September, 1826, explaining the provisions of those acts, and prescribing the manner in which they should be carried into effect. In relation to the assessment of the real and personal property of incorporated companies he said: “ Whatever may have been the losses of any company, it is to be assessed at the lull amount of the capital stock paid in or secured to be paid in, after deducting from this amount the deterioration of the real estate, if it has been actually diminished, or after adding to the amount the rise of the real estate, if it has actually enhanced in value.” This subject was also fully discussed by the comptroller in a report made to the assembly in 1837, mider a resolution of that body referring it to him to report whether any amendments were necessary in the laws relating to the taxation of incorporated companies. It appears that this reference was caused by a memorial presented for a modification of those laws, and after a full examination he sustained their *274 policy, and recommended some provisions to carry it into more effectual operation. (See Assembly Journ. of 1827, p. 538.)
It will be seen too by the notes of the revisers, (3 R. S. 501, 2d ed.,) that it was their design to carry out and simplify the provisions regulating the taxation of these companies, as contained in the statutes then in force, and to embody all the details that were necessary to guide the officer in the performance of his duty; and particular reference is made to the regulations contained in the circular of the comptroller above referred to.
It is contended, however, that although the effect of the sixth section, if unrestrained by other provisions of law, would be to subject moneyed corporations to taxation on the whole amount of their capita] paid in, yet that the eighth section of the title was intended to give relief in all cases where a portion of the capital has been lost. By this section the provisions of the fifteenth section of the second title of the assessment law are extended to the incorporated companies named in the sixth and seventh sections of the fourth title. The fifteenth section referred to provides for the reduction of the property of individuals, when over estimated by the assessors, to such value as shall be specified in the affidavit of the person aggrieved.
It is important here to observe that the sixth section of the fourth title as reported by the revisers extended only to such incorporated companies from which the statements under oath required to be delivered under the second section of the act had been received, and did not contain the exception in the third subdivision of that section as enacted, relative to manufacturing, turnpike and marine insurance companies; and that the seventh and eighth sections of the title were also inserted by the legislature after the alterations made by them in the sixth section.
As the assessors were by these new provisions required to insert in the assessment roll, not only the property of all incorpo-. rated companies from which such statements had been received, but of all others liable to taxation on their capital, and were also to ascertain the cash value of the stock of all manufacturing and turnpike companies, by the sale of stock, or in any other manner, for the purpose of taxation, it was certainly proper that *275 some remedy should be provided for an excessive assessment in such a case, as well as in the case of an excessive taxation of the property of individuals. But it could not have been the intention of the legislature to give the eighth section such an operation as in effect to extend the provisions of the seventh section to all other incorporated companies liable to taxation, as well as those specially provided for by it. If such had been the design it would have been useless to specify so particularly and in detail the manner in which such corporations generallyshall be assessed, and then make a special exemption in favor of manufacturing and turnpike companies.
Again, it is by the 17th and 18th sections of the third title expressly provided that all the real and personal estate liable to taxation shall be estimated by the assessors at its full value, except where they are specially required to observe a different rule.
It is manifest from these provisions that more than one rule of taxation was contemplated by the legislature; and I think it evident from the whole scope and tenor of the assessment law, that while all real estate, whether owned by individuals or corporations, and all the personal estate of individuals, was to be assessed by the general rule above prescribed, a different and more certain and definite standard for the taxation of the personal estate of corporations was intended to be adopted. The very fact that specific regulations were prescribed in relation to them warrants that conclusion.
It will be recollected that the terms “personal estate” and “personal property,” when applicable to corporations, are defined to mean such portions of their capital as is not invested in real estate; and when it is considered that it is made the duty of their officers to furnish the particular statement under oath required by the second section of the fourth title, the conclusion seems to me irresistible that the amount of capital paid in or secured to be paid in, after the proper deduction for their real estate, and the amount of their capital belonging to the state, and to incorporated literary and charitable institutions, was adopted as the only standard of taxation of their personal es *276 tate, except in relation to manufacturing, turnpike and marine insurance companies.' This very exception appears to me to exclude the application of the rule therein prescribed to the Companies not embraced -by it.
If this exception had not been introduced by the legislature, and the taxation of corporations had been confined to those only from which the statement required by the second section of the fourth title had been received, as was contemplated by the revisers, the eighth section would have been useless. That statement was designed to control the assessors so far as related to the taxation of the personal property of such companies; and their real estate, it will be recollected, was to bé assessed in the same manner as that of individuals, and sufficient provision had been previously made for its reduction in case of an excessive valuation. As however the sixth section was extended to incorporated companies who have not furnished such statement, and a new rule was prescribed by the seventh section for the taxation of manufacturing and turnpike companies, some provision became necessary to protect those companies against an erroneous assessment: and it appears to me that the object of the eighth section was, to give the power to manufacturing and turnpike companies, where an excessive valuation has been placed on their stock by the assessors, to reduce it to its actual value; and to provide for such other incorporated companies as had not furnished the statement required by the second section, the means of reducing the assessment to the amount of capital actually paid in or secured, but not below that amount. Such a construction will give full effect to the section, and at the same time be consistent with the general policy of the law.
The hardship of a rule which exacts the payment of taxes on capital that has been lost, was urged with great force and plausibility as an argument against such a construction of the law as would produce that effect. It must be recollected, however, that by the adoption of the amount of capital actually paid in or secured to be paid in as the standard, all increase and accumulations of the personal property of these institutions en *277 tirely escape taxation." The surplus, if any, cannot be taxed as the property of the individual stockholders till dividends of it have been declared. It may be remarked too that at the time of the adoption of this system, banks and fire insurance companies were principally, if not exclusively, subjected to its operation, and a loss of their capital stock, when their affairs were properly managed, was probably not anticipated. It will be seen also that while individuals are taxed for the full amount of their real estate, without any deduction for incumbrances thereon, and for the full amount of all their personal property, after deducting their debts, and that too whether an income is derived therefrom or not; yet that every corporation which is not in the receipt of any profits or income is exempted from taxation entirely, by the provision of the ninth section of title four, although their capital, whatever may be the amount actually paid in, is wholly unimpaired and in their vaults. And by the eleventh and twelfth sections of that title, certain corporations whose nett annual income does not exceed five per cent, on their capital stock paid in, are some of them exempted from taxation entirely, while others are entitled to a commutation for their taxes by the payment of five per cent, on such nett income during the preceding year.
It appears to me therefore that the intention of the legislature to adopt the amount of capital paid in or secured to be paid in, without reference to the amount possessed, as the rule for the taxation of corporations, (except when special and positive provisions are otherwise expressly made,) is clearly manifested; and that no consideration of hardship can justify a deviation therefrom.
I may add, that the distinction between the amount of capital paid in or secured to be paid in, and the amount actually possessed, appears to have been kept in view in various acts of the legislature relating to moneyed corporations. Thus, it will be seen that the amount of the contribution to the safety fund is regulated by the amount of the capital paid in, while their issues, loans and discounts are limited by the amount then paid in and actually possessed; and that dividends by moneyed *278 corporations are not allowed to be made where the amount of capital has been reduced by losses, until the same is made good. (See Sess. Laws of 1829, p. 167, §§ 21, 27, and 1 R. S. p. 589, §§ 1, 2, 3, 4.)
My opinion is that the appellants were properly taxed for the full amount of their capital, and that the decree of the chancellor ought to be affirmed with costs.
Senator Scott also delivered an opinion in favor of affirming the decree of the chancellor.
Bockee, Senator.
The question presented for our decision is new in this court. It may be assumed that the legislature intended equitable equality in the assessment of taxes; and that all property, (with the exception of such as they thought proper to exempt,) should sustain its just and relative proportion of the public burthens, and should not be liable to double taxation. It is not made a question but that the value of the personal property of the appellants is reduced to the amount specified in the bill. It is obvious that under the assessment made, this personal property pays very nearly double the amount of taxation for which the same property would be liable in other hands. The respondents claim that the' personal property of this corporation is to be assessed in reference to the original nominal amount of its capital, irrespective of losses or diminution. Their proposition is, that the 8th section of the 4th title, which extends to certain incorporated companies the provisions of the 15th section of the 2d title, does not include this corporation. I understand this to be the whole question in the cause. The 1st section of the 4th title, which creates the liability of stock corporations to taxation, is qualified, limited and defined by all the succeeding sections in the same title. The 8th section refers to the incorporated companies named in the two preceding sections. The 7th section names or mentions only manufacturing and turnpike corporations. The 6th section refers to all incorporated companies from which statements have been received of the real estate owned by them, the sums paid therefor, the capital *279 stock paid in, and the stock held by the state or by charitable institutions. Now I hold it unworthy, in the construction of this remedial statute, to resort to the strictest hypercriticism on the use of the word “ named.” It may be and is frequently used as synonymous with the words “ mentioned,” “ included,” or “ referred to.” In the 6th section manufacturing and turnpike corporations and marine insurance companies are “ named” only as exceptions to the directions contained in the 3d subdivision of the section. In the construction of statutes we are to pay the highest regard to the intention of the legislature, and very little regard is due to the grammarian and the lexicographer. On the principles of construction contended for by the respondents, the operation of the law would be this : A fire insurance or loan company may have all their personal assets vested in the stock of other incorporated companies liable to taxation, and the same identical property would thus be subject to double taxation. Equally unjust would be its operation in the present case, where one half of the capital is sunk in the sea, and the company are required to pay taxes on its whole amount. A description of the real estate, and a statement of the sum paid therefor, is directed to be returned to the assessors. The sum paid for real estate six years ago in some locations, may be twenty times its present value. It is true that the law authorizes the assessors to estimate the real estate at its actual value. But is there no remedy for excessive valuations ? I understand the chancellor as admitting in 4 Paige, 402, that the officers of the corporation may, under the provisions of the 15th section, reduce over-estimates of the real estate described in the assessment roll. And if one of the provisions of this 15th section applies to corporations other than insurance, manufacturing and turnpike companies, I can discover no reason why all those provisions do not apply. Although the mode of assessment is different, I cannot believe that the legislature intended to violate the fundamental law of taxation by rendering it unequal, and to impose more onerous burthens upon property owned by corporations than upon that held by natural persons. The manner of assessment is only a different form of reaching the property *280 of individuals, who are all bound relatively in proportion to their means to contribute to the public expenses. The statute seems to apply three different rules to the primary valuation of the personal property of corporations. In the case of stock corporations generally, the amount of capital stock, less the sum paid for real estate, and the amount of stock held by the state, and by literary and charitable institutions, is inserted in the assessment roll. In the case of manufacturing and turnpike corporations, the cash value of the stock, deducting the items before mentioned, is to be ascertained by the assessors by sales of the stock or otherwise. In the case of marine insurance companies, as no other provision is made, I presume that the assessors are, as in the case, of individuals, to ascertain by diligent inquiry the value of the personal assets owned by the company, and insert the same in their assessment roll, without any special reference either to the nominal amount of their capital, or to the cash value of the shares of stock in the market. In all cases of valuation, unless the present is an exception, the amount inserted in the assessment roll is no more than the prima facie statement of the amount of property liable to taxation, and is subject to equitable deductions. Justice requires the application of a uniform rule, and it appears to me the provisions of the statute are so full and explicit that no rational doubt can be entertained that the legislature intended to place corporations and natural persons on the same footing as regards the reduction of excessive valuations. In my opinion the decree of the chancellor ought to be reversed.
Hard, Senator.
The bill of the complainants is founded in the plainest principles of justice and equity, and the relief prayed should be granted unless by so doing a positive provision of the statute would be violated. The law directing the assessment and collection of taxes was intended to impose the burthens of taxation on all real and personal property in this state equally, with certain special exceptions, extending to objects generally eleemosynary in their character. Valuation is or ought always to be the basis *281 of assessments, and the rights of the tax-payer should never be made dependant upon legal forms or fictions!
The statute for the assessment and collection of taxes commences by declaring that all lands and all personal estate within this state, whether owned by individuals or by corporations, shall‘be liable to taxation, subject to the exemptions after-, wards specified. (1 R. S. 387, § 1.) In defining what is meant by “ personal estate,” the statute includes, among other things, stocks in incorporated companies. The term “ stock” usually refers to money or goods employed in trade, manufactures, banking, insurance, &c.: and money lent to government, or property in a public debt, is also denominated stock. But in all these cases the word indicates something substantial, or some productive capital having essential existence. The nominal capital stock of an institution, stated in round numbers, may and frequently does differ widely from- its actual amount. In such cases it is not conclusive on the question of valuation, though it must, from necessity, be taken as prima facie evidence.
The complainants set up in their bill, that although the nominal amount of their capital stock is §2,000,000, it has been reduced by losses or depreciation to about §1,000,000; that they have paid tax pro rata upon the sum last stated, but that the common council of New-York have assessed them upon the whole nominal amount, and are pressing the collection of the tax levied upon that sum.
The complainants attempted to procure a rebatement of the amount of tax, under the provisions of the fifteenth section of 1 R. S. 392, and for that purpose, at a proper time, and in legal form, .made and presented an affidavit, stating, among other things, that the amount of their personal estate did not exceed in value the sum of §940,514; but this affidavit was rejected.
It was contended on the argument that the complainants were brought within the provisions of the 15th section, by the operation and effect of the 8th section of title 4 of the same chapter. But the provisions of the latter section, by reference to the preceding 6th and 7th sections, are limited to a certain class of corporations, not including the complainants. It would be a palpable *282 perversion of the use of language to comprehend under the denomination of “ marine insurance,” a fire insurance corporation.
The complainants’ claim to relief rests upon a broader foundation than the limited provisions of the 8th section. It seems to me that they may find ample protection under the 15th section above referred to. That section is as follows: “ If any person whose real or personal estate is liable to taxation, shall at any time before the assessors shall have completed their assessments, make affidavit that the value of his real estate does not exceed a certain sum, to be specified in such affidavit: or that the value of the personal estate owned by him, after deducting his just debts, and his property invested in the stock of incorporated companies, liable under this chapter to taxation on their capital, does not exceed a certain sum to be specified in the affidavit, it shall be the duty of the assessors to value such real or personal estate, or both, as the case may be, at the sums specified in such affidavit, and no more.”
It is worthy of notice that this section comes in among the general provisions of the tax law, and in connection with the first section of the chapter; and is applied without any restriction or terms of limitation to all persons and all kinds of property. As by the first section the legislature intended to tax all persons upon the valuation of their whole property, real and personal, (with certain exceptions which do not apply here,) so it is equally manifest that they intended to afford relief to all persons by the 15th section, where their property was assessed too high. !
The term person in the 15th section is equivalent to individual and corporation in the 1 st section, and was no doubt intended to embrace both. It is applied as well to artificial as to natural persons. In the case of The Ontario Bank v. Bunnel, (10 Wend. 186,) the court decided that where a village tax was directed to be assessed “ upon the freeholders and inhabitants of the village” according to law, a stock corporation was an inhabitant of the village, within the meaning of the act, and liable to assessment. So too in The People v. The Utica Insurance Company, (15 Johns. R. 358,) it was determined that a *283 statute restraining any person from doing certain acts, applies equally to corporations, though not named. And the learned author of the Commentaries on American Law defines a corporation to be “ a franchise possessed by one or more individuals, who subsist as a body politic, with the capacity of acting in many respects as a single individual.” He adds : “ All the individuals composing a corporation, and their successors, are considered in law as but one moral personand he treats of corporations under his general division respecting the rights of persons. There can be no question therefore that the term person, as used in this chapter, applies as well to corporations as to natural persons.
Suppose the 4th title of this chapter were stricken out, or rather suppose it had never been enacted. Can there be a doubt that all corporations, liable to taxation, would have been within the provisions of the 15th section? How does the 4th title, all its provisions being taken together, alter the case? That title is advisory and directory, and was designed to aid the officers charged with the execution of the tax law. None of its provisions operate to repeal the 15th section, or to limit its application; nor do they any where restrict the application of the term person. The statute, under the circumstances presented in this case, ought to be construed most favorably to the tax-payer.
The power to levy taxes has always been offensive to the public sense, especially under our government; and the exercise of that power is ever watched with the most jealous eye. And while, from the necessity of the case, the rules regulating the mere forms of assessment and collection are summary, and sometimes even arbitrary, the general construction of the law ought to be in favor of the tax-payer. The claims upon him which the state holds are made to override those held by private individuals, from motives of public policy, and for the preservation of the public credit. The protection of the public agent too, in carrying into execution the assessment laws, will justify in some instances apparently oppressive measures. But when the proportion which each individual or person shall bear of the whole tax is to be ascertained, the rights of the public should *284 yield to those of the individual, and in settling the valuation the strictest impartiality ought to prevail.
By a strict construction of the statute, no person can be taxed for property which he does not own, nor can he be taxed upon the whole assessed valuation, if it be too high; and lest this wrong should be inflicted upon any tax payer, the statute has wisely provided a corrective. As if distrusting the judgment and competency of their own ministerial officers to fix a value upon others’ property, the legislature has submitted it to the conscience of the owner to fix such value according to his own estimate. This right is given to all persons by the 15th section above quoted.
This case was brought before the assistant vice chancellor, who dismissed the bill, and decided that the complainants were taxable upon the whole nominal amount of their capital stock ; and he sustained his opinion by reference to some cases decided by the supreme court and court of chancery of this state.
The first case referred to is that of The Bank of Utica v. The City of Utica, (4 Paige, 399,) which seems to afford but questionable authority for the one at bar. The principle avowed by that decision cannot easily be reconciled with the general policy of the assessment laws. As has been remarked, the first general proposition with which these laws start is, li that all lands and personal property, within this state, shall be taxed; and that too whether owned by individuals or corporations. There was $70,000 of cash capital in The Bank of Utica, belonging to that corporation, which was sought to be taxed; and the fact of its existence was not disputed. But the learned chancellor said, (and his opinions generally are entitled to the highest respect,) that it could not be taxed; and he there declared that moneyed corporations were taxable upon their nominal capital only. With due deference to the opinion of that able jurist, it seems to me that the rule established in that case cannot be supported either by the letter or the spirit of the statute; and most certainly it can find no favor from the principles of substantial justice.
But should the chancellor be right in that case, it cannot fur *285 nish authority applicable to this. The construction of the statute there was most favorable to the tax-payer. The question was, whether the owners should be taxed upon property which they actually held; while the question here is, whether they shall be taxed for what they do not hold. The facts of the two cases are directly opposite, though the abstract principle stated is the same.
Upon this authority the case of The People v. The Supervisors of Niagara, (4 Hill, 20,) was decided. That was a case where the bank sought an exemption under the 9th section of chapter 13, title 4 of part 1 of the revised statutes, on the ground that it had not been in the receipt of any profits or income for the year preceding; and that its expenses had equal-led its profits. There was no pretence of any diminution of the capital stock. The court decided that the bank was not exempt under the section mentioned; and that it was taxable upon the whole amount of its capital stock. The question did not properly arise there whether the bank was taxable upon the nominal amount of its stock, where there had been an actual loss, as in this case, or where there was an actual surplus, as in the case of The Bank of Utica v. The City of Utica; but the question was whether where the actual amount of stock corresponded with the nominal amount, the bank was taxable if the profits of that stock did not exceed the loss for the preceding year. The court decided it was, and very properly; for the statute makes no distinction in the assessment on real or personal estate, whether it be actually productive or not. If such a rule were established in the case of bank stock, it must prevail also as to every kind of personal as well as real property, and for the few years past but little property would have been found which could be deemed taxable.
All the complainants claim in this case, as I understand, is to be exempt from taxation upon that portion of their nominal capital which has been irreparably lost. This claim, it seems to me, is founded in impartial justice, and ought to be allowed. The decree therefore is wrong, and ought to be reversed.
*286 Hopkins, Senator.
Property is the basis of taxation by the laws of this state. The taxation of debts due to one is not an exception, for even then the basis is the property which has gone into the hands of the debtor, where it is relieved from direct taxation so long as the debt remains. Securities for the purchase money of real estate, where not only the land but the debt is taxed, are perhaps exceptions, or rather they form an instance of double taxation, unequal and unjust. For instance, in one town the proprietor sells his lands and takes securities for the purchase money. The land is taxed and the securities are taxed. In another town the proprietor leases his lands, with perhaps a privilege of purchase. There the land alone is taxed. The one town may contribute twice as much to the county and state taxes as the other. This is I believe the only instance of double taxation recognized by law, and being unjust should have no force in settling a legal principle.
The 1st section of 1 R. S. 387, declares that all “ lands” and “ personal estate,” with certain exceptions, shall be liable to taxation. It is no where imposed upon a mere privilege. When banking or other privileges are granted by the legislature, it has been done, professedly at least, from other considerations of public advantage. Since the public sense of morality required lotteries to be abolished, I believe we have no instance of the state having bartered any privilege within its gift from pecuniary consideration or advantage. I take it the only object of taxing corporations was to tax their property which would not be taxed any other way-; which when loaned out by them would not be assessed to the borrower, because he owed for it. But if a bank has actually lost its property, or, which is the same thing, it has passed from the borrower, he having become bankrupt, the money has gone into the hands of others, where it has become taxable; and the bank, having neither the money, nor any thing of value in place of it, cannot upon any correct principle be taxed for it.
The 15th section of 1 R. S. 392, provides for the reduction of assessments of real and personal estate, upon due production of the proper affidavit; and the provisions of that section are, by *287 section 8, p. 416, extended to incorporated companies, and the proper officers designated to make the affidavit. The words “ personal estate” used in the 15th section are, by section 3, p. 388, declared to include capital of incorporated companies liable to taxation: so that unless there is something else to take corporations out of the 15th section, they are at all events within the letter of the provisions authorizing a reduction of assessments of their “ personal estate.”
It is said that this could not have been intended, or the assessors would not have been required in the first instance to put down their whole capital, deducting sums paid for real estate &c. In the case of an individual they are required to assess in the first instance such sum as they shall think right; but that may be reduced by the subsequent production of an affidavit. I see no reason why the same privilege should not be deemed to have been extended to corporations, since they are at least within the letter of the provision. I think the legislature intended to make the original capital prima facie the sum to be assessed, about which no discretion should be left with the assessors; subject nevertheless to be reduced upon production of the proper affidavit.
The assistant vice chancellor who decided the case before us rested his decision mainly upon the case of the Bank of Utica v. The City of Utica, (4 Paige, 399,) in which Chancellor Walworth no doubt correctly decided that the bank was not liable to be taxed for the surplus profits on hand. The statute certainly does not authorize an assessment against the bank beyond the capital stock. Although the surplus profits may go with the capital stock, they do not form part of it. One may be divided; the other cannot be. But because they are not taxable to the bank, it seems to be inferred that they are not taxable at all. I see no reason why they may not be assessed to the stockholders. If they cannot be so assessed, then any amount of the capital of the country may be allowed to accumulate with corporations where the investment proves profitable, to gain profits upon profits, without being liable to taxation. Until it be decided that the surplus profits cannot be taxed *288 against the stockholders, I think no inference can be drawn in support of any proposition grounded on the assumption that they are not taxable.
Again, the 1st section of title 4, (1 R. S. 414,) provides, that “ all monied or stock corporations, deriving an income from their capital, or otherwise, shall be liable to taxation on their capital, in the manner hereinafter prescribed.” If an income from their whole capital was intended to be required to subject them to taxation, then if part be lost, as in the present case, there cannot be an income on the whole, and they would not be liable to taxation. But if an income derived from apart of their capital be sufficient to subject them to taxation, then they are of course liable only on that part; the terms their capital having the same meaning as used in the two places.
I think the latter is the true construction. Several provisions of the statutes (1 R. S. 589 et seq.) contemplate possible reductions of their capital stock by losses. Section 4 provides that losses exceeding the undivided profits in hand “ shall be chargeable as a reduction of the capital stock” and no dividends are to be allowed until the deficit is made good. The 5th section provides, that in case of losses “proper to be charged as a reduction of the capital stock,” the privilege of discounts shall be limited accordingly. It would not be unjust to tax them for what capital remains, although no dividends are made, because it is still productive of new capital; but to tax them on the whole capital, when a part is lost, and is taxed somewhere else, does not seem to be just or required by law.
The learned vice chancellor also refers to the opinion of the supreme court in The People v. The Supervisors of Niagara, (4 Hill, 20,) to sustain the decision in this case. The case referred to has little or no force as an authority in this case, as I think will appeal' upon an examination of.it. The first section of title four, already referred to, declares that corporations deriving “an income” from their capital or otherwise, shall be liable to taxation on their capital. It will be observed that the expression used here, “ an income,” indicates something more than the daily receipts coming in without reference to the out *289 goes. The 9th section of the same title provides that upon the production of an affidavit that the company is not in the receipt of “ any profits or incomethe name of the corporation shall be stricken from the assessment roll. The supreme court, in the case referred to, decided that the term l< income” here used in the statute means that which comes in or is received from any business or investment of capital, without reference to the out-going expenditures; and that therefore a bank or corporation is in the receipt of profits or income, within the meaning of the statute, whenever it is receiving any sums, however small, arising from its capital, although paid out the same day, perhaps for expenses or losses. And that it remains liable to taxation on its whole capital, although at the usual period for stating the accounts of profit and loss it is found to have sustained a loss instead of deriving “ an income” from its capital.
Is it not more reasonable to suppose that the legislature intended by the use of the term “ income,” an aggregate sum, or the clear profits derived from the capital of the company periodically, ascertained at stated times according to the usage of the business carried on; and not the mere daily receipts without reference to expenditures or losses ? The income of capital invested in a farm is the sum received for. its annual productions after deducting expenses. If the farm be leased, the periodical rents must be the income of the landlord; and that of the lesseé, the annual profits after deducting expenses and rents. If he receives a dollar for a bushel of wheat one day, which he pays out the next to the laborer who aided in producing it, or if it goes to replace one already paid out, it can hardly be called income, though it may be a part of the daily receipts. If it can be called income, then the owner of a farm who expends two thousand dollars to raise produce, which he sells for one thousand dollars, may without misrepresentation say that the farm yields him an income of one thousand dollars, when in truth it has been productive of a loss of that sum. If such is the true construction of the statute, then no bank or company, whether doing an unprofitable or losing business, or wholly insolvent, if it is receiving any sums due to it, can derive any benefit from *290 the provisions of the act; in other words, the provision can have no practical force or effect whatever. If then corporations must at all events be subject to taxation on their capital, there is the more reason why the construction I have given to the first section of the act should prevail, "confining the taxation, as it does, to that part of their capital which remains, and which only can produce an income within the meaning of that section.
The decision of the supreme court referred to by the vice chancellor was upon ap application growing out of the taxing of institutions under the general banking law, in which it is decided that they are corporations, and therefore necessarily subject to the provisions of prior statutes relative to the taxation of corporations; although it is evident from the whole tenor of the general banking law, that, whatever those institutions may be, (corporations or mere associations,) they should be governed by a system of their own. The fact that they are no where in the act called corporations, but throughout are designated by another name, is evidence that the legislature never intended to make them subject to any general provisions relative to corporations, or to give them the privileges of corporations except such as are expressly conferred by the act under which they are organized. As well might the provisions of the safety fund act be held applicable to them, because that act declares that its provisions shall extend to all monied corporations thereafter created.
Concede it to be possible that those associations are corporations, notwithstanding the resolution of this court in Warner v. Beers, (23 Wend. 190,) or that the resolution would better have expressed the views of the court, if, instead of declaring that they are not corporations, within the spirit and meaning of the constitution, it had merely declared that the law under which they are organized was not within the spirit and1 meaning of the constitution ; leaving it to be inferred that they might notwithstanding be corporations. Still the legislature was not inhibited by any previous legislation from giving to them such privileges and subjecting them to such system of police and government as was, deemed proper ; and I see no reason why *291 courts should subject them, to a system of government evidently never designed for them by the legislature. I do not believe that when the legislature authorized the deposit with the comptroller of mortgages, (made for the purpose, and without any valuable consideration passing to the mortgagor,) to remain as mere indemnities against the debts or circulating notes of these associations, it was ever intended to subject them to taxation for their full nominal amount; nor if they were to be taxed, that it was intended the benefit of it should be taken from the towns in which the mortgagors or associates reside, and be given to the cities or villages where the office of the association happens to be located. For these reasons I do not think that the case referred to should have much weight as an authority to sustain the decree in this case.
I am of opinion that when corporations have actually lost part of their capital beyond Recovery except by the profits upon what remains, they should be taxed only on what remains producing an income; and consequently that the decree in this case should be reversed.
Senators Franklin and Rhoades also delivered opinions in favor of reversing the decree of the chancellor.
On the question being put, “ Shall this decree be reversed ?” the members of the court voted as follows :
For reversal: Senators Bockee, Dixon, Faulkner, Franklin, Hard, Hopkins, Platt, Putnam and Rhoades —9.
For affirmance : The Chief Justice, and Senators Bart-lit, Chamberlain, Lawrence, Lott, Mitchell, Porter, Scott, Scovil, Varnev and Wright—11.
Decree affirmed.

The chief justice here alludes doubtless to an opinion given by the attorney general, in obedience to a resolution of the senate, on the 10th of April, 1833. (Sen. Doc. of l832, No. 103.) This opinion maintains that a taxable corporation is entitled to a deduction for so much of its capital as is invested in the stock of other corporations liable to taxation.