### THE EXCHANGE BANK *vs.* MONTEATH and others.

Where drafts were drawn by J. & M., the general agents at Albany, of a line of tow boats, upon H., the agent of the line in New York, at the request and for the accommodation of the Canal Bank, and signed by J. & M. as " Agents of the Tow Boat Company," payable to their own order and indorsed by them as agents, and subsequently discounted by the plaintiff, at the request of the Canal Bank, for a valuable consideration; *it was held*, in an action against the tow boat company, that the plaintiff, being apprised, by the drafts themselves, that they were drawn by agents, took them at the risk of showing, affirmatively, that the agents not only had the *apparent* authority to make the drafts, but also that the same were actually made for the benefit of the defendants, their principals.

MOTION for a new trial. The action was brought to recover the amount of three drafts drawn by Joy & Monteath, as agents of the defendants, upon Alfred Hoyt, another agent, together amounting to $9500. The drafts were drawn at the request of the cashier of the Canal Bank of Albany, and for the accommodation of that bank. The plaintiffs discounted the drafts upon the application of the cashier of the Canal Bank. For a further statement of the facts in the case, see 17 *Barb.* 171. The new trial which had been ordered was had at the Albany circuit, in October, 1854, before Mr. Justice HARRIS. The testimony being closed, the counsel for the defendants moved for a nonsuit, upon the ground that Joy & Monteath had exceeded their authority in drawing drafts for the benefit and accommodation of the Canal Bank, and that the drafts appearing upon their face to have been drawn by procuration, the plaintiffs were chargeable with knowledge of the agents' want of authority, and could not claim protection as *bona fide* holders. The judge denied the motion for a nonsuit, and directed a verdict for the plaintiff for $14,248.79, the amount of the drafts, with interest. To these decisions the counsel for the defendants excepted. An order was made that the motion for a new trial, upon the exceptions, be heard in the first instance at the general term, and that the entry of judgment be stayed until such hearing.

*J. H. Reynolds*, for the plaintiff.

*J. K. Porter*, for the defendants.

*By the Court,* HARRIS, J.   When this case was before us on the former application for a new trial, I was unable to find any thing to distinguish it from the case of *The North River Bank* v. *Aymar,* (3 *Hill,* 262.)   Upon a re-examination, I still think the two cases involve precisely the same question.   In the latter case, Pexcel Fowler had executed a power of attorney authorizing his brother Jacob D. Fowler " to indorse any promissory note or notes, bills of exchange, or drafts, to accept all bills of exchange or drafts, or, in his name, to draw any note or notes."   In the case under consideration, the drafts were drawn in the same form in which for several years the agents had been in the habit of drawing drafts in the business of the defendants. Such drafts had been discounted by the Canal Bank, and, on several occasions, had been re-discounted by the plaintiffs.   In *The North River Bank* v. *Aymar,* the notes were made and indorsed by the attorney, for the accommodation of David Rodgers & Son, who passed them to the plaintiffs.   In this case the drafts were drawn by the agent, for the accommodation of the Canal Bank, whose cashier procured them to be discounted by the plaintiffs.   It appeared upon the face of the paper in both cases, that it was the act of an agent.   In each case, the act was within the *apparent* scope of the agent's authority.   In neither case was there evidence sufficient to warrant a jury in finding that the plaintiffs had not acted in good faith.   I have taken the pains to refer to the record in the case of *The North River Bank* v. *Aymar,* from which it appears that upon the trial, which was had before Chief Justice Oakley, it was held that "it being asserted or shown that the notes were not made or indorsed in the business, or for the benefit of Pexcel Fowler, but for the benefit of D. Rodgers & Son, and that Jacob D. Fowler, in signing and indorsing the same, was not acting within the general scope of his authority, Pexcel Fowler was not bound thereby, and no recovery could be had thereon against the defendants as his executors.   The decision upon the trial was sustained by the superior court, but upon error to the supreme court it was reversed, after being twice argued, as appears from the report of *Stainer* v. *Tysen,* (3 *Hill,* 279,) and by a divided court.

The doctrine of the majority, as declared by Cowen, J., was, that though, as against his principal, the agent exceeded his authority, yet, as the agent had been clothed with authority to issue such paper, it could not be impeached in the hands of a *bona fide* holder.   On the contrary, it was maintained by Nelson, Ch. J., in a dissenting opinion, that being apprised, by the notes themselves, that they had been signed by an attorney, they were received by the plaintiffs under the hazard of showing that they had been made and negotiated within the precise limit of his authority.   With this case before us, presenting a deliberate and unreversed adjudication of the precise point involved, the duty of this court, whatever may have been its own views of the question upon its merits, was entirely plain.   Accordingly, when pronouncing the decision of the court granting a new trial in this case, when it was before under consideration, I did not hesitate to say that I regarded the case of *The North River Bank* v. *Aymar*, as directly in point and decisive of the question.   I still think it should be so regarded. But, since the former decision, it has been discovered that the case of *The North River Bank* was, upon error brought to the court for the correction of errors, reversed.   No report of the decision has been published, but it is obvious, I think, that the court of last resort must have adopted the view of the question maintained in the dissenting opinion of Ch. J. Nelson.   There was no other question before the court.   The judgment of the supreme court could not have been reversed, except upon the ground that before the plaintiffs in the action could recover, it was necessary for them to prove that the power of attorney, upon its face, authorized the agent to sign and indorse notes for his principal, and also, that *the notes were, in fact, made and indorsed in the business of the principal, or for his benefit*.   The application of this doctrine to the case in hand, would require us to hold that the plaintiffs took the drafts in question at the risk of showing, affirmatively, that the agents not only had the *apparent* authority to make the drafts, but also that they were actually made for the benefit of the defendant.

Since this case was argued, a kindred question has been be-fore the court of appeals, in the case of *The Mechanics' Bank of New York* v. *The New York and New Haven R. R. Co.* In that case, Schuyler, the transfer agent of the defendants, had illegally and fraudulently issued and delivered to one Kyle a certificate for 85 shares of stock in the defendants' corpora-tion. This stock had been pledged to the plaintiffs in the ac-tion, by Kyle, as security for money loaned. It was conceded that in the hands of Kyle the certificate was void, and it was held by the court of appeals that it was equally void in the hands of the plaintiffs, although received by them in good faith. The unanimous judgment of the court was pronounced by Judge Comstock. It is characterized by great clearness and strength of argument. In referring to the decision of the supreme court, in the case of *The North River Bank* v. *Aymar*, and its re-versal by the court of errors, the learned judge says : "If the reversal proceeded, as I suppose it must, upon a doctrine direct-ly opposite to that held by the supreme court, then the case certainly suggests a limit of great importance to the liability of principals, the recognition of which would be decisive of the present controversy" After noticing several recent English decisions, where it has been held that though the act of the agent *appeared* to be strictly within his power, the principal was not liable because it was not so in fact, he adds that " it is obvious that an agent may clothe his act with all the *indicia* of authority, and yet the act itself not be within the real or appa-rent power. The appearance of the *power* is one thing, and for that the principal is responsible. The appearance of the *act* is another, and for that, if responsible, I think the remedy is against the agent only. The fundamental proposition is, that one man can be bound only by the authorized acts of another. He cannot be charged because another holds a commission from him, and falsely asserts that his acts are within it."

The history of this action has been quite remarkable. It has been pending nearly eight years. When it was *first* tried, it was submitted to a jury who were unable to agree upon a verdict. Upon the *second* trial, a juror was withdrawn. The

*third* trial resulted in a nonsuit. That nonsuit was set aside and a new trial ordered, for the reasons stated in the report of the case in 17 *Barb.* 176. A *fourth* trial was had, when the court directed a verdict for the plaintiffs. Now, in consequence of the discovery of the fact that the decision of the supreme court, which seemed to settle the law of this case, had been reversed, we are obliged to recall our own decision and sustain the ruling of Mr. Justice WRIGHT, upon the third trial. As neither party can now expect to derive any advantage from further litigation in this court, it is to be hoped that, by consent of the parties, such a form may be given to the record as will enable them, without further delay or expense, to take the judgment of the court of appeals upon the important question which the case presents. It only remains for this court to declare that a new trial must be awarded.

[ALBANY GENERAL TERM, December 3, 1855. *Wright, Harris* and *Watson*, Justices.]