ence, for it would be of no use as evidence where the title and description were fully ascertained by the pleadings.

In *Ehle* agt. *Quackenboss* (6 *Hill*, 539), this court held that the term "title," as used in the statute under consideration, is limited to the right of possession. In this case the inquiry was as to the fact, not the right of possession. For when the fact was ascertained to be as the plaintiff alleged it, the right stood admitted. (*Idem*, 540; *see also Ford* agt. *Sampson*, 17 *How.* 447.)

The application made must be denied.

---

# COURT OF APPEALS.

The British Commercial Life Insurance Company agt. The Commissioners of Taxes and Assessments for the City and County of New York.

It is settled by the decision of the United States Court in the case of *The People ex rel. Bank of Commerce* agt. *Commissioners of Taxes of New York* (25 *How. Pr. R.* 9,) that *stocks of the United States*, are exempt from *state taxation*.

The *place of assessment*, for the purposes of taxation of a *foreign corporation* doing business in this state, is where the operations of the corporation are carried on—not at the residence of the *comptroller* of the state, who has charge of the securities deposited by such corporation under the statute.

*Corporations*, are to be included under the general term *"persons,"* in regard to their liablity to *taxation* in the place where they carry on their business.

A *foreign corporation*, (British commercial life insurance company) doing business in this state, is liable to be *taxed upon the bonds of this state*—bonds of the city of Buffalo—deposited with the comptroller of this state, under the statute provided for that purpose. Such bonds are included under the term *personal estate* as used in the statute; and they must be considered *"property invested in any manner in the business which they carry on,"* under the statute of 1855.

*September Term*, 1864.

The relators are a corporation, incorporated by act of parliament of the united kingdom of Great Britain and Ireland, passed in 1821, and authorized by their charter to make insurance on lives. They have never been incorpo-

rated in this state, but have twenty-eight agencies here for the purpose of receiving applications for insurance.

The agents receive applications for insurance, and, upon approval of the risks by the directors in England, the policies are there made out and transmitted to the agents here, who transmit to the company the premiums received by them. The losses are paid through the agents.

The relators deposited with the comptroller of this state, pursuant to the provisions of the act of June 24, 1853, the sum of $100,000, consisting of $50,000 of the bonds of the city of Buffalo, and $50,000 of the public stocks of the United States of America. (*Laws* 1853, *pp.* 888, 889, §§ 6, 7, *pp.* 1029, 1030, *and pp.* 893, 894, § 15.)

On the 27th of February, 1855, an act was passed providing for the assessment and taxation of all persons and associations not residents of this state, doing business in this state, " on all sums invested in any manner in said business, the same as if they were residents of this state," &c. (*Laws of* 1855, *p.* 44.)

The deputy tax commissioners for the year 1857–8, under the direction of the commissioners of taxes and assessments, within the time required by law, assessed the personal property of the relators at $100,000. (*Vol.* 2, *Laws of* 1857, *pp.* 498, 499, § 10.)

The principal office or agency of the relators is in the first ward of the city of New York.

Application was made to the commissioners to strike out said assessment, which was denied. The relators obtained a certiorari under section 24 of the act of April 16, 1857. Defendants made return to the writ. (*Laws of* 1857, *vol.* 2, *p.* 503.)

Judgment was rendered at the special term of the supreme court, reversing the proceedings of the commissioners as to the $50,000 of the United States stock, and affirming the assessment in respect to the $50,000 of Buf-

falo city bonds.   The general term affirmed the decision
of the special term.   Both parties have appealed to this
court.

CHARLES A. RAPALLO, *for plaintiffs.*

I. The assessment in question is invalid, unless the au-
thority to impose it can be found in the act of Feb. 27,
1855, which is in the following words :

§ 1.  " All persons and associations doing business in the
State of New York as merchants, bankers, or otherwise,
either as principals or partners, whether special or other-
wise, and not residents of this state, shall be assessed and
taxed on all sums invested in any manner in said business,
in the same manner as if they were  residents of this state;
and said taxes shall be collected from the property of the
firms, persons or associations to which they severally be-
long."  (*Session Laws of* 1855, *chap.* 37 ; 1 *R. S.* 5*th ed. p.*
905, § 2.)

1. At the time of the passage of the act of 1855, the per-
sonal property of foreign corporations was exempt from
taxation.

(*a*) By 1 *R. S.* (5*th ed.*), *p.* 906, *sec.* 5, (*Part* 1, *chap.* 13,
*tit.* 1,) it is enacted that, " The following property shall be
exempt from taxation :"

Sub. 7. The personal  property  of every  incorporated
company not made liable  to taxation on its capital in the
4th title of this chapter.

(*b*) Title 4 of chap. 13 (1 *R. S.* 5*th ed. p.* 944), contains
no provisions applicable to foreign corporations.

It cannot be contended that the legislature intended
chapter 4 to apply to foreign corporations.   If it did, the
entire capital of this company, which is situated in Eng-
land, and consists of several millions, and the capital of
every corporation in the world, would be liable to taxation
in this state.

2. There was no manner provided for assessing a non-resident or a foreign corporation in respect of personal property situated in this state.

(*a*) " Persons" could only be assessed in the towns or wards where they resided.

(*b*) Corporations liable to taxation upon their capital, were to be assessed in the towns or wards of their principal office, &c.

There was no provision for the assessment of corporations other than those liable to taxation upon their capital (*See* 1 *R. S. p.* 908, 5*th ed*). *Mem.* In § 5 the word " of " is misprinted " *or*," as will appear by reference to the session laws and to the opinion of Ch. J. COMSTOCK in the case of *Hoyt*.

3. Statutes were in force at that time expressly providing for the taxation of foreign insurance companies, and establishing the manner of such taxation; *i. e.*, by requiring them to pay a percentage on the premiums earned here. (*Laws of* 1824, *chap.* 277; *Id.* 1827, 1 *R. S.* 974; *Id.* 1829, *chap.* 336; *Id.* 1837, *chap.* 30; *Id.* 1849, *chap.* 178.)

II. The act of 1855 does not authorize the assessment in question.

It does not in terms apply, nor can it be inferred that it was intended to apply, to foreign corporations.

It was intended to meet the case of natural persons, concerned in partnerships or unincorporated associations, who personally transacted their business and managed their capital in this state, under the protection of its laws, while residing beyond its limits, and thus evaded taxation.

1. It does not mention "foreign corporations," although those are words of great frequency in our statutes.

2. It is, apparently with care, confined to " persons," and " associations."

(*a*) The term " persons" when used in the statutes of this state, does not, in general, include corporations, other-

wise the legislature would not have considered it necessary to enact special provisions, declaring in what cases the term " persons" shall be deemed to include corporations, as in the following instances : *R. S., part* 4, *chap.* 1, *title* 7, § 40 (3 *R. S.* 5*th ed. p.* 990, § 46) ; it is enacted that the term " person," when used in that chapter, shall be construed to include public and private corporations.

By the acts in relation to unauthorized banking (2 *R. S.,* 5*th ed. p.* 981), "persons " are prohibited from becoming members of companies formed, or to be formed, for the purpose of unauthorized banking. Incorporated companies are prohibited from employing their effects in such business. The terms person, association of persons, body corporate, &c., are used as having different significations.

The statutes relating to proceedings against non-residents and foreign corporations recognize the distinction between them.

The statutes in relation to insurances (2 *R. S.* 5*th ed. pp.* 983, 984), separately enumerate "person," "association" and " incorporation established in a foreign country."

The distinction between these terms is especially observable in the laws relating to taxation. By the act of 1857, ch. 176 (1 *R. S.* 5*th ed. p.* 908), every "person" shall be assessed in respect of his personal property in the town or ward where he resides.

All the personal estate of every " incorporated company liable to taxation on its capital " shall be assessed in the town or ward where its principal office, &c., shall be. 1 *R. S.* (5*th ed. p.* 912, 1857), section 23, declares that the term " person " or " persons," when used in certain sections of the law relating to taxation shall be construed to include corporations (" *expressio unius, exclusio alterius*").

The term " association" does not describe a corporation, unless the term "incorporation " be added to it. It means only persons who are associated together. A corporation is a unit, a being created by the law, known by a particu-

lar name, deriving its powers and attributes from the law which creates it, and not from the persons who are corporators, and liable to be proceeded against, under laws expressly applicable to corporations.

A mere association, on the contrary, derives its powers from the individuals who compose it. Associations and corporations are totally distinct from each other in their origin, constitution and characteristics.

3. The context of the act shows that it was not intended to apply, and is not applicable, to corporations.

(a) "Doing business as principals, or partners." Doing business as a principal excludes the idea of any agency. That term applies evidently to natural persons transacting their own business. Doing business as partners also applies to individuals only.

(b) "Not residents of this state." The term residence is not applicable to corporations, except when the question of citizenship arises. In the tax laws it has no such application.

(c) The manner indicated in the act of 1855, for assessing the taxes authorized by that act, shows that that act was not intended to be applicable to corporations. "They shall be assessed in the same manner as if they were residents of this state"—not in the same manner as if they were corporations created under the laws of this state.

Under the tax laws, as revised in 1813 (2 R. L. 509, §§ 1 and 2), all personal estate of persons residing in this state was taxable.

It was never held that corporations were taxable under that provision.

(d) The provisions as to the place of taxation shows that the term "residence," when used in the tax laws, is not deemed applicable to corporations. "Individuals" are taxable in the town or ward where they reside; "corporations liable to taxation on their capital" in the town or ward where their principal office, &c., is situated.

III. The absence of any reference in the act of 1855, to the then existing laws in regard to the taxation of foreign fire and marine insurance companies, shows that the act was not intended to apply to those companies, or to change the existing laws respecting them.

IV. If the act of 1855 applied to the plaintiffs it applied to all foreign corporations, including fire and marine insurance companies, and subjected them to a double tax.

This cannot be supposed to have been the intention of the legislature.

V. The taxation of insurance companies incorporated in foreign countries, having been already regulated by specific laws, which were in force at the time of the passage of the act of 1855, that subject, in the absence of any repeal of those special regulations, cannot be deemed to have been embraced in the general terms employed in the act of 1855, especially when the terms so employed are not, in their common and ordinary sense, applicable to such companies.

VI. The acts of 1857 and 1858, regulating the taxation of foreign insurance companies, exclude the idea that the act of 1855 applied to such companies, and show that the legislature deemed the separate system of taxation established in respect to such companies as still continuing.

VII. The provisions of the act of 1857, last referred to, restrict the right to tax the assets of foreign corporations to cases where they have not less than $300,000, invested in this state. This amount is, by the amendment of 1858, reduced to $150,000, and it is provided that when the assets are below that amount, the only tax which can be imposed is two per cent upon premiums.

The case before the court does not come within any of those provisions.

VIII. The case before the court is not one of those at which the act of 1855 was aimed. The object of that act was to reach individuals transacting their own business in

this state, and having their residences outside of its limits. This appears from the language of the act, which declares that they shall be taxed "in the same manner as if they were residents of this state."

The subject of taxing corporations, foreign and domestic, was already provided for by a system adapted to that specific subject. If the legislature have omitted to embrace, in those provisions, foreign life insurance companies, the omission cannot be supplied by the court.

IX. In no event could the deposit in question be taxed in the city of New York. The provisions for taxing corporations, where their principal place of business is situated, only apply to such corporations as are taxable on their capital, under title 4 of chapter 13, of part 1 of the R. S.

The manner of assessing the tax is declared by the act of 1855 to be, not that provided for assessing corporations, but that they shall be assessed "the same as if they were residents of this state."

Therefore, if the deposit in question is taxable at all, it can only be taxed by assessing the comptroller in respect of it as trustee, and that assessment must be made at the place of his residence, and the tax imposed at the comparatively moderate rate of taxation prevailing there, instead of the extravagant one to which the residents of the city of New York are subjected.

X. The deposit, in question, is not a sum invested in business. The sum is invested in the stocks in question. It is withdrawn from business and separated from the other assets of the company. It is a special trust fund, placed in the hands of the comptroller, not subject to the control of the company or to the claims of its general creditors, but declared by law to be merely a security to its policy-holders, resident in the United States. (*Act of June* 24, 1863, *ch.* 463, § 6.) The fund in question is not, therefore, such a one as is intended by the act of 1855.

XI. The policy of the state, as declared in the act of 1851, is to encourage the investment of foreign capital in our securities.

Capital transmitted here for such investment is by that act expressly exempted from taxation (*Laws of* 1851, *ch.* ).

XII. The decision of the general term, in respect to the $50,000 of United States stock, should be affirmed.

This case is distinguishable from that of the *Bank of the Commonwealth.* There, the tax was imposed upon the capital of the bank, and the amount of that capital was to be fixed at the actual value of the capital stock, subject to certain deductions, enumerated in the statute. The United States stock was one of the elements of the value of the stock of the bank, and indirectly contributed to increase the tax, but it was not itself the subject of taxation, and, therefore, did not fall within the decision in the case of *Weston* agt. *The City of Charleston.*

Here the case is different. If the tax can be assessed at all, it is assessable directly upon the deposit, consisting of United States stocks, and, therefore, falls within the decision of the supreme court of the United States, in the case of *Weston.*

XIII. The judgment as to the Buffalo city stocks should be reversed, and costs should be awarded to the plaintiffs on both appeals.

A. R. LAWRENCE, JR., *for defendants.*

*First*—The relators having demurred to the return to the writ of certiorari, all the facts stated in the return must, for the purposes of this appeal, be taken as true. If, therefore, there is any conflict between the petition on which the writ was obtained and the return on a matter of fact, the return must prevail. (*See Return, Case, pp.* 6, 7; *Demurrer to Case, p.* 13, *fol.* 48.)

*Second*—The return states, as a matter of fact, that the principal office or agency of the company in this state is in the first ward of the city of New York.

If there was any authority, therefore, for making an assessment upon the stock deposited by the relators with the comptroller, the assessment was properly made in the city of New York, as and for property situated in the first ward. (1 *R. S. p.* 390, 1*st ed.*; 1. *R. S. p.* 909, 5*th ed.*)

*Third*—The relators are within the class subjected to taxation by the act of the legislature of this state, passed February 27, 1855, entitled, " An act amendatory of the acts for the assessment and collection of taxes."

(*a.*) The phraseology is applicable to foreign companies doing business in this state, whether incorporated or unincorporated.

The term " person " includes a corporation. (*United States* agt. *Amedy*, 11 *Wheat.* 392; *People* agt. *Utica Ins. Co.* 15 *Johns.* 358; *Clinton, &c. Manuf. Co.* agt. *Morse, cited in above*; *Angell & Ames on Corp'ns, pp.* 472, 473, § 441; *State of Indiana* agt. *Woram*, 6 *Hill*, 33.)

In the case of the *People* agt. *The Utica Insurance Company* (*supra*), THOMPSON, J., says: " It was decided by this court in the case of the *Clinton Woolen and Manufacturing Company* agt. *Morse & Bennett* (*October Term*, 1817), that under the act for the assessment and collection of taxes, corporations are liable to be taxed for property owned by them. Yet the act speaks only of ' persons' liable to be assessed, and the term corporation is not used at all."

And a corporation has been held to be an " inhabitant," within the meaning of the tax laws. (*Ontario Bank* agt. *Bunnell*, 10 *Wend.* 186; *Sherwood* agt. *Saratoga &c. R. R. Co.* 15 *Barb.*, 657; *Cowper's Rep.* 78.)

Also to be an " occupier," within the meaning of statutes relative to taxation employing that term. (*See cases cited by* NELSON, J., *in Ontario Bank* agt. *Bunnell.*)

(b.) The term "associations" includes corporations. Association simply means "the act of associating, union, connection of persons."

The "associations" under the banking law of 1838 were held by the supreme court to be "corporations." (*People* agt. *Watertown*, 1 *Hill*, 620; *Sandford* agt. *Supervisors*, DAVIES, J., 15 *Howard's P. R.* 172.)

By the constitution, a "corporation" includes any "association" possessing any other powers than a partnership (*Article* 8, § 2).

The citation of the counsel for the relators (in the points presented to the commissioners, case, p. 12, fols. 43, 44), from the act of 1837, relative to "unauthorized banking," shows that the legislature considered the term "associations" as embracing "corporations," because, in speaking of "association," the term is qualified by the addition of the words, "of persons not incorporated."

What necessity could there have been for this qualification, if the term "association" did not, if unqualified, embrace incorporations.

In fact, the term "association" is a broader and more comprehensive term than "corporation," inasmuch as it embraces all aggregations of individuals for business purposes, other than simple partnerships, whether incorporated or unincorporated.

Again, as the terms "person" and "association" have been heretofore construed, in acts relating to the assessment of taxes, to embrace a "corporation," there is no reason why, in the absence of any clearly expressed intention on the part of the legislature to restrict the operation of the act of 1855 to unincorporated companies or natural persons, the courts should give such a construction to that act.

The spirit of that act is to subject individuals, whether incorporated or unincorporated, whether partnerships or associations, or natural persons, who are not residents of

this state, but are doing business therein, in any way, to taxation on all sums invested in their business here; and there certainly can be no good reason for exempting from the operation of the statute any body of individuals, which, according to the recognized rules of construction, should be embraced in the language of the statute.

*Fourth*—It being established that the relators are within the class subjected to taxation by the act of 1855, the next question is, are they doing business in this state, within the meaning of that act?

(*a.*) We insist that the relators are doing business in this state through their agents.

They have twenty-eight agencies in this state, for the purpose of receiving applications for insurance, for transmitting the applications to England, and for delivering the policies if the risks are approved by the company, and also for collecting the premiums for such policies, and for paying the losses when allowed by the directors in England.

All these acts are business matters of the company, and, indeed, the most essential part of the business of the company, so far as its operations in this state are concerned, and it is difficult to conceive how it can be contended that a company engaged in such operations, through its agents, is not engaged in the transaction of business here.

*Fifth*—If we have succeeded in showing that the relators are embraced in the class subjected to taxation by the act of 1855, and that they are engaged, through their agents, in the transaction of business in this state, it follows that they stand in the same position in reference to liability to taxation upon sums invested in business here as "corporations" or "associations" created or organized under the laws of this state. (*Laws of* 1855, *p.* 44; *Opinion of Supreme Court, case, p.* 26; *International Life Insurance Co.* agt. *Commissioners of Taxes,* 28 *Barb.* 318.)

Two questions then remain to be considered:

1st. Whether a corporation or an association, organized

and doing business under the laws of this state, would be liable to taxation upon a similar deposit to that involved in this case; and,

2d. Whether the sum of one hundred thousand dollars, invested in the stocks deposited with the comptroller, is to be considered as invested in the business of the relators in this state.

*A.* As to the first question:

The sixth section of the act, entitled, "an act to provide for the incorporation of life and health insurance companies, and in relation to agencies of such companies," passed June 24, 1853, as amended July 18, 1853 (*Laws of* 1853, *pp.* 888, 889, 1029, 1030), provides that "no company shall be organized under this act, for the purposes mentioned in the first department, with a less capital than $100,000. * * * The whole capital of such company shall, before proceeding to business, be paid in and invested in stocks of the United States, or of the state of New York, &c. * * * No company organized for the purposes mentioned in the first department shall commence business until they have deposited with the comptroller of this state the sum of one hundred thousand dollars in the stocks or securities before mentioned. * * * The comptroller shall hold such stocks or securities as security for policy holders in said companies" (*See Laws of* 1853, *pp.* 888, 889, § 6, *as amended by Laws of* 1853, *pp.*1029, 1030).

The act further provides, that "whenever the corporators shall have fully organized such company, and the said company have deposited with the comptroller the requisite amount of capital, it shall become his duty to furnish the corporation with a certificate of such deposit, which, &c., shall be the authority to commence business and issue policies," &c. (*Laws of* 1853, *p.* 889, § 7).

Here we have a distinct declaration, on the part of the legislature, that the stocks deposited with the comptroller by companies organized under the laws of this state are

the capital of such companies. (*Opinion Supreme Court, case, pp.* 24, 27; *International Life Insurance Co.* agt. *Commissioners of Taxes,* 28 *Barb.* 318.)

It follows, then, as a matter of course, that such stocks are liable to taxation, as the capital of such companies, under the provisions of the Revised Statutes. (1 *R. S. p.* 944, 5*th ed.*; 1 *R. S. p.* 414, 3*d ed.*)

It is also obvious, from the further provisions of the act of 1853, aforesaid, that the legislature regarded the deposit made by foreign life insurance companies as precisely of the same character as the deposit by the other companies.

The 15th section of the act aforesaid provides that, " it shall not be lawful for any person to act, in this state, as agent or otherwise, in procuring applications for life or health insurance, or in any manner to aid in transacting the business of any life or health insurance company, incorporated by or organized under the laws of any foreign government, until such company have deposited with the comptroller of this state, for the benefit of the policy-holders of such company, citizens or residents of the United States, securities to the amount of one hundred thousand dollars, of the kind required by section sixth for similar companies of this state," &c. (*Laws of* 1853, *p.* 893).

The section then goes on to provide that the company shall appoint an attorney on whom process can be served, and that when he has filed with the comptroller a certified copy of the charter, and of the vote or resolution of the trustees appointing him attorney, the comptroller shall give a certificate to that effect, &c., which certificate, when filed, &c., shall be the authority to commence business (*Laws of* 1853, *p.* 893).

It thus appears that the deposit by a foreign company is intended to secure the same class of persons as the deposit of the other companies—to wit, the policy-holders in this state, or of the United States; that it is made the fund to which the policy-holders are to resort for payment

of their claims, and that it is made a condition precedent to the right of the company to transact business, as well in the case of the former as in the latter.

Can there be any reason, then, for saying that, as the deposits in both cases are intended for the same purposes, they should not bear the same burthens?

Again, apart from the provisions of the statute of 1853, which define the deposit in question to be capital, such deposit would be considered the capital of the appellants, on general legal principles. As we have above shown, the object of making the deposit is to provide a fund, out of which the policy-holders may receive payment of any claims that they may have against the company (*Laws of* 1853, *p.* 893, § 15).

This court has, in the case of *The Mutual Insurance Company* agt. *Supervisors of Erie*, (4 *Comstock*, 448,) defined the capital of a corporation or association to be the fund upon which it transacts its business, which would be liable to its creditors, and, in case of insolvency, pass to a receiver. (*International Life Ins. Co.* agt. *Com's of Taxes*, 28 *Barb.* 318; *Opinion of Supreme Court, case, p.* 25.)

It seems clear, then, that a company created under the laws of this state would be liable to be taxed upon a similar deposit.

*B.* As to the second question:

The commissioners contend that the money invested in the stocks deposited by the relators with the comptroller is invested in their business in this state, even if it cannot properly be considered as capital. The legislature in using the terms " sums invested in any manner in said business," seem to have sought for language which would meet any conceivable case of the employment of money in this state for business purposes, by the class subject to taxation specified in the act of 1855. Those terms embrace the capital of the companies or persons doing business here, and something besides. Now the sole inducement which the

relators had for the purchase of the stock deposited by them with the comptroller, was to obtain the right to transact business in this state. That right depended upon the investment. Without the investment, the relators could do no business in this state; and having made it, and deposited the stocks with the comptroller, and performed the other acts prescribed by the act of 1853, their right to transact business here became complete.

*Sixth*—The recent decision of this court, in the case of *The People* agt. *The New England Insurance Company*, does not affect this case.

(*a*) The act of 1851, chapter 95, which rendered it obligatory upon the insurance companies of the other states doing business in this state, to make a deposit of stocks with the comptroller, had been repealed by the act of June, 24, 1853, under which foreign companies were still obliged to make such a deposit. And at the time that the assessment was made in that case, it was not a condition precedent to the rights of the New England company to do business here through its agents, that it should continue its deposit with the comptroller.

In point of fact then, the stock which the New England insurance company had in the hands of the comptroller of this state, was a voluntary deposit, and in no way connected with the transaction of its business here. The remarks of MARVIN, J., in relation to the effect of a deposit of stocks by a life insurance company of another state, under the act of 1851, before that act was repealed, were unnecessary for the decision of the case before the court and *obiter*.

*Seventh*—The act of April 15, 1857, cited by the relator's counsel in his points presented to the commissioners, does not affect this case, because it expressly exempts from its operation the real estate and stocks owned by life insurance companies. (*Laws* 1857, *p.* 2, § 4; *case, p.* 13.) Indeed, the inference is irresistible, from the phraseology of that

act, that the legislature supposed that life insurance companies were taxable upon the stocks deposited with the comptroller.

*Eighth*—The decision of the supreme court of the United States, in the case of *The People ex rel. The Bank of Commerce* agt. *The Commissioners of Taxes and Assessments*, being adverse to the power of the taxing officers of the state to tax United States stocks, the appeal taken by the commissioners will not be discussed.

*Ninth*—The judgment below should be approved, with costs.

INGRAHAM, J. The decision of this court below as to the United States stocks must be considered as correct under the reviewed decision of the supreme court of the United States on the same question. The stock of the United States is exempt from state taxation, and here the assessment is directly made upon such securities. The respondent's counsel concedes this and does not argue this branch of the case. It is objected on the part of the appellant that the place of assessment should be where the comptroller resides, upon the ground that he holds the funds as trustee, and he, not the company should be assessed. The property, is the property of the company held by them but deposited with the comptroller as security. It would not be taxable if the company did not carry on business in this state. By the provisions of the R. S. vol. 1 (5th ed.) p. 905, § 1, all lands and all personal estate within this state, whether owned by individuals or by corporations, are made liable to taxation, and by section 4, debts due on bonds are included under the term personal estate.

By 1 R. S. (5th ed.) p. 908, § 5, every person is to be assessed in the town or ward where he resides, for the personal estate owned by him, and by section 6, the personal estate of every incorporated company liable to taxation on

its capital shall be assessed in the town or ward where the principal office or place for transacting the financial business is located, or where the operations of the company shall be carried on. The return states that the place of business of the corporation is in the city of New York, which is admitted by the demurrer. The act of 1855, section 1, provides that all persons and associations doing business in this state and not resident of the state shall be assessed and taxed on all sums invested in any manner in said business, the same as if they were residents of the state. Taking these provisions together, I think there can be no difficulty in holding that the place of assessment is the place where the operations of the corporation are carried on.

Generally, under "persons" as used in the laws providing for taxation, corporations have been included, unless some special provision of law provided in the same case for the taxation of corporations under some other form of assessment (*The People* agt. *Utica Insurance Company*, 15 *John.* 258); and so corporations have been considered as inhabitants for the purpose of taxation (*Ontario Bank* agt. *Bunnell*, 10 *Wend.* 186). These cases show that corporations are to be included under the general term "persons" in regard to their liability to taxation in the place where they carry on their business, and that there is no ground for the objection that the corporation was assessed in the city of New York. The other question is whether the plaintiffs are liable to be taxed upon the bonds of the city of Buffalo deposited with the comptroller. There can be no doubt but that those bonds are included under the term personal estate as used in the statute, and the only question which can arise is whether it is property invested in any manner in the business which they carry on. Upon this point there can be but little doubt. The statute prohibits foreign corporations from carrying on business of life insurance until such company have deposited with the

comptroller securities to the amount of $100,000, for the benefit of the policy-holders of the company (*Laws of* 1853, *ch.* 463, § 15). This deposit with the comptroller is necessarily made in connection with the business of the company, without it they can do no business, and it is so deposited as to be security to those who may hold policies of the company. It is therefore used in the business of the company and in fact forms its capital in this state, which is liable to its creditors and comes within the definition of capital as defined in *The Mutual Insurance Company* agt. *Supervisors of Erie* (4 *Comstock*, 448). These securities, so deposited with the comptroller, form the same kind of capital as that of a domestic corporation incorporated for a similar purpose, in which the capital is the security for those who deal with it, neither is actually invested in business and used for that purpose, but both form the basis on which the business is transacted and the security from which payments of claims is to be enforced. So far as the assessment was made on the bonds of the city of Buffalo the same was properly made, and the order appealed from should be affirmed.

---

# SUPREME COURT.

## James Williams agt. Martin Barnaman.

Before a *justice of the peace* is authorized to proceed with the action in which an *attachment* has been issued, it is necessary that he should have the *officer's return* to the attachment, showing a *service of it* in the manner provided for by the statute. It is the only manner in which the justice can acquire *jurisdiction.* The return of the officer is the *evidence* to be furnished to the justice that the statute has been complied with.

Where the defendant has had no *personal notice* of the suit, by the service of the attachment upon him, it is vitally important that the different steps prescribed by the statute should be accurately followed.

Where the return of the constable stated "that a copy of the attachment was left with Barnaman's (defendant's) wife, at Martinsville, as defendant cannot be