THE PEOPLE *ex rel.* BANK OF BRITISH NORTH AMERICA v. COM-MISSIONERS OF TAXES, ETC., OF NEW YORK.

PEOPLE *ex rel.* BANK OF MONTREAL v. THE SAME.

PEOPLE *ex rel.* CANADIAN BANK OF COMMERCE v. THE SAME.

*Taxation — foreign banks doing business here through permanent agents liable to taxation.*

Certain Canadian banks did business in New York city through agencies permanently located there. These agencies held funds of the banks which were loaned on call or for specified times to borrowers. *Held,* that these banks were liable to taxation upon the amounts invested in their business in this State, under Laws of 1855, chap. 37, which subjects to taxation non-resident associations doing banking business here, and could not claim exemption under Laws of 1851, chap. 176, § 2, exempting moneys in the hands of agents of non-resident capitalists sent here for investment.

CERTIORARI to review the proceedings of the commissioners of taxes and assessments in the city and county of New York. The facts are sufficiently stated in the opinion.

*W. C. Barrett, T. C. C. Buckley* and *D. D. Lord,* for relators.

*E. Delafield Smith* and *James C. Carter,* for respondents.

OCTOBER TERM, 1873. 631

People ex rel. Bank of British North America v. Com. of Taxes, etc., of N. Y.

FANCHER, J. Writs of certiorari were issued in these proceedings to the commissioners of taxes and assessments in the city and county of New York, to review their action in assessing the relators pursuant to the provisions of the act of February 27, 1855, on sums invested in their business in this State. The following is the act referred to :

§ 1. "All persons and associations doing business in the State of New York as merchants, bankers or otherwise, either as principals or partners, whether special or otherwise, and not residents of this State, shall be assessed and taxed on all sums invested in any manner in said business, the same as if they were residents of the State, and said taxes shall be collected from the property of the firms, persons or associations to which they severally belong."

The relators are foreign corporations, but there can be no doubt they are included within the terms of the statute. The word "association" has various significations, one of which is "union of persons in a company." Some of the reasons which probably induced the legislature to pass the act referred to are stated by SELDEN, J., in *Parker Mills* v. *Com. of Taxes*, 23 N. Y. 244. That learned judge assumes that the legislature intended to include corporations in the expression "all persons and associations." See also *British Com. Life Ins. Co.* v. *Com. of Taxes*, 28 How. Pr. 41.

It was never the policy of this State to impose taxes upon property sent here from abroad for the mere purpose of sales, or other temporary design, but the statute of February 27, 1865, did intend to subject to taxation all sums invested by non-residents in any manner in their business in this State. Such sums, whether employed here by individuals, firms or corporations, come in competition with the capital of our resident citizens and domestic corporations. Such moneys are protected by our law, equally, with domestic capital. There seems to be no reason why they should not contribute to the public burdens and the expenses of government.

It appears that the relators have agencies established here who conduct a permanent business in New York. The agency of the Bank of Montreal has existed here for 14 years ; that of the Bank of British N. A. for 10 years, and that of the Canadian Bank of Commerce for one year. The funds at these agencies are loaned on call, and on specified time to borrowers. It is the same business largely pursued by our own banks, bankers and capitalists with domestic capital. The capital of foreign corporations comes in direct com-

petition with the business of our resident citizens, to the extent that it is thus employed. One of the affidavits used before the respondents, which was made on behalf of one of the relators, states "that deponents are engaged as its agents for the employment of a portion of its funds until required elsewhere; that as such agents deponents had received, at the time of their assessment, money forming part of a general fund reserved by the bank to meet shortly maturing and unexpected liabilities, and deponent had employed the funds so sent them partly in loans payable on demand, for which they had received no vouchers, and partly in loans payable at specified times, for which they had received notes, drafts and other commercial paper."

These funds, it is stated on behalf of the relators, are at the absolute disposal of the principal institution, and thus liable to be recalled from the agents, and some of the funds remain uninvested or unemployed in the hands of the agents. It may be answered, however, the whole fund attracts business to the agency, and so much of it as is from time to time required is used for the advantage of the business.

The commissioners, after receiving the affidavits of the agents, and hearing them or their counsel as to the matter, determined on the amount invested by the relators in business here, and fixed "the assessment at $300,000 for the Bank of British North America; $300,000 for the Canadian Bank of Commerce, and $350,000 for the Bank of Montreal, as the sums respectively invested by said banks in business in New York."

The commissioners, as to the amounts thus employed in business in New York, acted upon evidence produced before them in conformity with law, and there is nothing in the papers before us to indicate that their determination was erroneous, as to such amounts.

The points presented on behalf of the relators do not impeach the judgment of the commissioners, as to the several amounts of assessable capital employed here by the agencies of the relator; but they raise various questions of construction and of law touching the legality of the assessment.

It is contended that the act of April 15th, 1851 (chap. 176), "to amend the law for the assessment and collection of taxes," is not abrogated by the act of February 27, 1855 (chap. 37), and which, being still in force, covers the case of agents not engaged in business here for themselves, who hold the funds of others for investment.

The act of 1851 was an amendment of the Revised Statutes, which authorized the assessment of every person, in the town or ward where he resided, "for all personal estate owned by him, including all under his control as trustee, executor or administrator." It went further than the Revised Statutes, by inserting the word "agent" before the word "trustee." It, however, exonerated from taxation agents holding products from other States for sale on commission, and agents of moneyed corporations and capitalists for "moneys in their possession, or under their control, transmitted to them for purposes of investment or otherwise."

It is not necessary to hold that the two acts of 1851 and 1855 are inconsistent. If it were, the latter would prevail over the former. Should a farmer or manufacturer, residing in a foreign state, send his products to an agent in this State to be sold, neither the property nor the proceeds could be taxed. Exemption could be claimed under the act of 1851. So an isolated transaction in several transactions between non-residents and their agents in this State, by which moneys were transmitted by the principals to the agents for investment, or other temporary purposes, would not subject the agents to taxation in this State, on account of such moneys in their possession. Exemption could be claimed under the act of 1851, as to such moneys for temporary use. But if foreign capitalists or foreign corporations establish permanent agencies within this State, so that, in the words of the act of 1855, they are "doing business in the State of New York," the act declares that such non-residents "shall be assessed and taxed on all sums invested in any manner in said business, the same as if they were residents of the State."

There is no doubt, upon the facts of these cases, that the act of 1855 applies to the relators. According to the ordinary sense and meaning of language, they are non-residents, doing business in this State, and the moneys in possession of their agents here are sums invested in business.

If the relators pursue the business in New York, upon call or specified time, and take choses in action, gold, or foreign bills as security, they hold the securities received in place of the money, until the loans are paid. In the strict sense of the term, such money is invested in such business. The fund kept in the agency here is employed for the purposes of the business. It is a business conducted at the agency and not at the home office, and the funds

634     FIRST DEPARTMENT,

People ex rel. Bank of British North America v. Com. of Taxes, etc., of N. Y.

employed are invested in the business here. Dealing in exchange and making loans, comprise a large portion of the business of our own banks and bankers. *Bard* v. *Poole*, 12 N. Y. 506.

It is further objected by the relators that the funds in question are not within this State so as to be reached by taxation, and it is contended that the situs of personal property follows the residence of the owner. It is a recognized principle that a resident here cannot be taxed on property situated elsewhere. *Hoyt* v. *Com. of Taxes*, 23 N. Y. 224. This rule is frequently applied to property which is capable of having an actual situs. Debts and choses in action follow the domicile of the owner, but a trader having a capital invested in business must be taxed in respect of it, at the place where the business is carried on. If one of our own residents is carrying on business in New Orleans, he is not, under our laws, taxed here upon his capital invested in Louisiana. *Hoyt* v. *Com. of Taxes*, 23 N. Y. 226. The fallacy of the doctrine that goods and chattels have no *situs* except that of the domicile of the owner, was fully exhibited by the learned opinion of the court in that case. For many purposes movables are deemed to have no *situs* but that of the owner; but for many other purposes the laws of all the States assume that personal property has a situs entirely distinct from the owner's domicile. The attachment laws, the insolvency laws and the administration laws of the several States, all assume such separate *situs*. It has been pertinently remarked that "a nation within whose territory any personal property is actually situated, has an entire dominion over it. while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there." Story on Conf. of Laws, § 550. And it was well observed by COMSTOCK, J., in the last case *supra*. "I can think of no more just and appropriate exercise of the sovereignty and jurisdiction of a State or nation over property situated within it and protected by its laws, than to compel it to contribute toward the maintenance of government and law."

In a well-adjusted system of taxation, the fiction that the situs of personal property follows, the domicile of the owner is not regarded. The taxing power is executed as well with reference to the actual situs of the property, as to the residence of its owner. There is no doubt that the principle of taxation recognized in our system justifies the attempt of the legislature, by the act of 1855, to

subject foreign capital invested here in business to the burden of taxation.

We think there should be judgment for the respondents, with costs.

INGRAHAM, P. J., and BRADY, J., concurred.

*Judgment accordingly.*